**William R. TONEY**

v.

**U.S. HEALTHCARE, INC., et al.**

**Civ. A. No. 93–3181.**

United States District Court,
E.D. Pennsylvania.

Nov. 5, 1993.

Robert W. Michell, Huntingdon Valley, PA, Cornelia Farrell Maggio, Exton, PA, for William R. Toney.

Richard L. Strouse, Brian D. Pedrow, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for U.S. Healthcare, Inc.

Derek R. Layser, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for Dr. Harvey Spector.

James I. Devine, James I. Devine & Associates, Plymouth Meeting, PA, for Dr. George Bradford.

Douglas Fahringer, Plymouth Meeting, PA, for Dr. Louanne Thorndyke.

Michael A. McKernan, Plymouth Meeting, PA, for Dr. Peter Binnion.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, William R. Toney, is infected with the human immunodeficiency virus ("HIV"), the virus which causes acquired immunodeficiency syndrome ("AIDS"). He alleges that defendant physicians and defendant U.S. Healthcare, Inc., the health maintenance organization to which he belongs, have discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101. The case is now before the court on motions to dismiss or for summary judgment filed by defendant Dr. Luanne Thorndyke and defendant U.S. Healthcare.

In February of 1991, plaintiff's physician, Dr. Harvey Spector, diagnosed plaintiff as infected with HIV. Plaintiff alleges that Dr. Spector refused to continue to treat him after making this diagnosis.[1] Plaintiff contacted U.S. Healthcare to find a new physician who was willing to treat an HIV positive patient. U.S. Healthcare provided plaintiff with a list of participating physicians to contact.

In March of 1991, plaintiff obtained an appointment with Dr. George Bradford, who allegedly also refused to treat plaintiff once he learned of plaintiff's HIV status. Dr. Bradford did, however, refer plaintiff to Dr. Van Uidert, an infectious disease specialist, on a number of occasions.

Plaintiff continued to contact U.S. Healthcare to try to locate a primary care physician, rather than a specialist, who would agree to care for him. Through a health care referral system unaffiliated with U.S. Healthcare, plaintiff obtained an appointment with Dr. Luanne Thorndyke. Dr. Thorndyke accepted plaintiff as a patient in October of 1991 and treated him until July of 1992, when plaintiff voluntarily left her care to begin treatment with Dr. Peter Binnion.

Dr. Binnion treated plaintiff from July of 1992 until October of 1992, when Dr. Binnion stopped accepting U.S. Healthcare patients. Plaintiff admits he was able to secure another physician after again contacting U.S. Healthcare, and apparently, plaintiff has maintained his relationship with this physician without incident.

*Motion of Dr. Thorndyke*

Plaintiff has asserted a claim under the Rehabilitation Act against Dr. Thorndyke.[2] Section 794(a) of the Rehabilitation Act, more commonly referred to by its original section number, § 504, provides that

[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794.

To state a claim under the Rehabilitation Act, "a plaintiff must prove (1) that he is

1. Plaintiff's complaint originally included a claim against Dr. Spector under the Rehabilitation Act. This claim was dismissed as time-barred.

2. Plaintiff states in his brief in opposition to Dr. Thorndyke's motion to dismiss or for summary

judgment that he has also stated a claim against Dr. Thorndyke under the Americans with Disabilities Act, 42 U.S.C. § 12101. A review of the complaint shows that he has not stated such a claim.

a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the position sought, (3) that he was excluded from the position sought solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Strathie v. Department of Transportation,* 716 F.2d 227, 230 (3d Cir.1983) (citation omitted). While the parties do not dispute that plaintiff is a "handicapped individual" by reason of his HIV status, Dr. Thorndyke does contest the other three factors.

Both plaintiff and Dr. Thorndyke have submitted affidavits in support of their positions regarding her motion to dismiss or for summary judgment. It is undisputed that Dr. Thorndyke treats HIV positive patients other than plaintiff, that she knew of plaintiff's HIV status when she accepted him as a patient, that she saw him for appointments nine times in approximately ten months, that she referred him to specialists three times, and that she or a member of her staff returned thirteen of plaintiff's telephone calls.

Under the Rehabilitation Act, plaintiff must establish that although he is handicapped, he is "otherwise qualified" for medical treatment. Thus, he must prove that if it were not for his handicap, he would be eligible for the treatment in issue. Dr. Thorndyke cites *United States v. University Hospital* to support her contention that plaintiff cannot meet that statutory test. 729 F.2d 144 (2d Cir.1984). *University Hospital* held that the "otherwise qualified" language of § 504 "cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." 729 F.2d at 156. Accordingly, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'" 729 F.2d at 157. In *Johnson v. Thompson,* the Court of Appeals for the Tenth Circuit followed *University Hospital* in holding that infants were not "otherwise qualified" for treatment for spina bifida, because the treatment sought would be wholly unnecessary in the absence of the handicapping condition. 971 F.2d 1487, 1494 (10th Cir.1992), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993).

*Glanz v. Vernick,* relied on by the plaintiff, does not conflict with *Johnson* or *University Hospital.* In *Glanz,* an AIDS patient was denied treatment for an unrelated ear condition. 750 F.Supp. 39 (D.Mass.1990). *Glanz* is inapplicable to the case at bar, because here, as in *University Hospital* and *Johnson,* plaintiff's handicapping condition, HIV infection, is exactly the same condition for which he seeks medical attention. Under the circumstances, an analysis of whether he is "otherwise qualified" for treatment is meaningless.

Dr. Thorndyke also alleges that claims against her must be dismissed because plaintiff has challenged medical treatment decisions which are nonreviewable under § 504 of the Rehabilitation Act. The *University Hospital* court held that

> [i]n view of [the] consistent congressional policy against the involvement of federal personnel in medical treatment decisions, we cannot presume that congress intended to repeal its earlier announcements in the absence of clear evidence of congressional intent to do so ... there is no such clear expression of congressional intent in either the language or legislative history of section 504.

729 F.2d at 160 (citation omitted).

Plaintiff claims that his case is distinguishable from *University Hospital* because plaintiff "does not question the medical decisions of Defendant THORNDYKE," but rather contests "the manner in which the treatment was handled and the effect of such treatment protocol." Essentially, plaintiff's claim is that Dr. Thorndyke did not see him or call him frequently enough, not that she refused to provide treatment at all. As stated above, plaintiff does not dispute that Dr. Thorndyke accepted him as a patient with full knowledge that he was HIV positive, that she treated him nine times in ten months herself and referred him to specialists three times, or that the decision to end the doctor-patient relationship was his, not Dr. Thorndyke's.

■ Plaintiff correctly states that the Supreme Court in *Bowen v. American Hospital*

*Association* held that "a hospital rule or state policy denying or limiting" access to medical care "would be subject to challenge under § 504." 476 U.S. 610, 624, 106 S.Ct. 2101, 2111, 90 L.Ed.2d 584 (1986) (plurality opinion). *Bowen,* however, considered only state or hospital interference with the decisions of parents of handicapped children and their physicians. *Bowen* did not hold that a medical doctor may be subject to a lawsuit under § 504 for refusing to see a regular adult patient every time he or she desires. This court holds that a determination by a physician of when her regular patient's condition warrants an additional office visit is a medical treatment decision not subject to judicial review.

In support of her motion for summary judgment, Dr. Thorndyke argues that the undisputed facts demonstrate that any alleged discrimination against plaintiff could not have been based "*solely* [on] his disability," that is, his HIV status, § 794(a) (emphasis added). In *Johnson,* the court held that for a plaintiff to maintain a claim pursuant to § 504,

> the discrimination must result from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result "solely by reason of [the] handicap."

971 F.2d at 1493.

■ Plaintiff contends that because he does not allege any reason other than his HIV status for the discrimination, his claim should survive a summary judgment motion. However, there is no factual dispute between the parties. Plaintiff does not contest Dr. Thorndyke's affidavit stating that she has other HIV positive patients, nor does he allege that she treats all of her HIV positive patients differently than her non-HIV patients. Without such information, plaintiff cannot show that his HIV status was the sole basis for Dr. Thorndyke's alleged discrimination against him. Accordingly, as in *Celotex Corp. v. Catrett,*

> there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Dr. Thorndyke is therefore entitled to summary judgment with respect to plaintiff's claim under § 504 of the Rehabilitation Act.

Dr. Thorndyke also alleges that she is not subject to the provisions of the Rehabilitation Act because she is not a recipient of federal funds. Both parties have repeatedly cited cases which have been superseded by statute. In light of the court's decision on other issues raised, it need not determine this issue, or the issue of whether plaintiff must first exhaust administrative remedies provided by U.S. Healthcare in connection with his complaints about Dr. Thorndyke.

*Motion of U.S. Healthcare*

U.S. Healthcare argues that plaintiff is contractually bound to exhaust its grievance procedure before bringing suit against it. U.S. Healthcare's grievance procedure was not mandatory when plaintiff first enrolled in U.S. Healthcare pursuant to a group agreement with plaintiff's employer, the Community College of Philadelphia. The contract provided that it would

> be subject to amendment, modification or termination in accordance with any provision ... by operation of law, by filing with and approval by [sic] applicable public authority. This can also be done by mutual written agreement between [U.S. Healthcare] and [plaintiff's employer] without the consent of [plaintiff].

The Pennsylvania Bureau of Health Financing and Program Development approved a revision of U.S. Healthcare's grievance procedure on October 15, 1991. This revision provided that the new grievance procedure would be "mandatory and must be exhausted prior to the filing of an appeal with the Department of Health or the institution of any litigation in court...." This revised grievance procedure became effective on Jan-

uary 1, 1992, well before plaintiff filed his complaint in this case.

Plaintiff called and later wrote U.S. Healthcare in the spring of 1992 to discuss "the failure of U.S. Healthcare to provide me with a Primary Care Physician, who would provide Quality care to me for my HIV status." In response, U.S. Healthcare sent plaintiff a listing of available physicians and a letter explaining that "[b]ecause U.S. Healthcare is committed to a member's freedom of choice in selecting a primary care physician, we are unable to select one for you." U.S. Healthcare also enclosed a copy of the grievance resolution procedure, and outlined in the letter the steps necessary for plaintiff to proceed with a grievance if he remained dissatisfied with U.S. Healthcare's response.[3] Plaintiff never filed a grievance on this or any other issue raised in his complaint.

Plaintiff cites *NAACP v. Medical Center, Inc.* for the proposition that exhaustion of administrative remedies is not a prerequisite to an assertion of a cause of action under § 504. 599 F.2d 1247 (3d Cir.1979). However, plaintiff misunderstands the import of that case. *NAACP v. Medical Center* only pertained to the question of whether exhaustion of a federal administrative remedy was a prerequisite to bringing a private cause of action. The court held that it was not a requirement, because the only administrative remedy available, termination of federal funding to the institution which discriminated against the plaintiff, could not afford the individual plaintiff adequate relief. 599 F.2d at 1249. In the case at bar, however, there is no dispute as to plaintiff's right to bring a private cause of action. The issue is whether the exhaustion of non-binding grievance procedures, pursuant to an agreement between U.S. Healthcare and plaintiff's employer, would be futile.

[4] Plaintiff argues that pursuing his contractual grievance remedies would be futile because, despite numerous telephone calls from plaintiff to U.S. Healthcare, his complaints were not resolved to his satisfaction. Plaintiff also appears to believe that the only relief he could receive by submitting a claim to U.S. Healthcare's grievance procedure would be the imposition of a fine on the organization, the withdrawal of its certificate of operation, or the suspension of any federal funding it receives. However, the provisions of the grievance resolution procedures do not limit plaintiff's remedies to those he has enumerated. Indeed, its provisions contemplate recovery of monetary damages in appropriate cases.[4] Plaintiff has not established that pursuit of grievance procedure remedies would be futile. Plaintiff is contractually bound to exhaust the remedies provided by U.S. Healthcare before instituting litigation, and accordingly, his claim against U.S. Healthcare must be dismissed for failure to do so.

### ORDER

AND NOW, this 5th day of November, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant, Dr. Luanne Thorndyke, for summary judgment is GRANTED. Dr. Thorndyke's motion to

---

**3.** The grievance resolution procedures provide for three tiers of review. The first review panel is required to reach a decision within 45 days, the second, within 30 days, and the third, within 10 days. Expedited proceedings are available in case of an emergency.

Written notice of procedures for obtaining the next level of review are sent to the complainant along with the decision. U.S. Healthcare also notifies the complainant that an uninvolved representative is available to assist him or her with the grievance process.

The final level of appeal provides for a panel of three to hear the complainant's claim. One member of the panel must be a non-employee subscriber of U.S. Healthcare, and the other two must not have had any previous involvement with the complainant's claim. At the final appeal, the complainant may be represented by counsel, question U.S. Healthcare representatives and witnesses, and present testimony, expert witnesses and documentary evidence. The hearing is transcribed, and all testimony is taken under oath. After exhaustion of the grievance procedure, the complainant may file an appeal with the Department of Health or institute litigation or arbitration proceedings.

**4.** The procedures state that the panel shall provide the complainant with a written description of its understanding of the nature of the grievance, including the "dollar amount of the disputed issue, medical facts in dispute, etc."

206

dismiss Count V of plaintiff's complaint is DENIED as moot.

It is further ORDERED that the motion of defendant, U.S. Healthcare, Inc., to dismiss Counts I and II of plaintiff's complaint is GRANTED for failure to exhaust contractual grievance remedies. U.S. Healthcare's motion for summary judgment is DENIED as moot.