**William R. TONEY,**

v.

**U.S. HEALTHCARE, INC., George Bradford, M.D., Peter Binnion, M.D.**

**Civ. A. No. 93–3181.**

United States District Court, E.D. Pennsylvania.

Dec. 30, 1993.

---

Cornelia Farrell Maggio, Exton, PA, for plaintiff.

James I. Devine, Plymouth Meeting, PA, for George Bradford, M.D.

Michael A. McKernan, Plymouth Meeting, PA, for Peter Binnion, M.D.

## MEMORANDUM

BARTLE, District Judge.

As stated in this court's Memorandum of November 5, 1993, reported at 838 F.Supp. 201, (E.D.Pa.1993), plaintiff, William R. Toney ("Toney"), is infected with the human immunodeficiency virus ("HIV"), the virus which causes acquired immunodeficiency syndrome ("AIDS"). He alleges that defendants Dr. George Bradford and Dr. Peter Binnion have discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C.

§ 794, and that Dr. Binnion has discriminated against him in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. Presently before the court are the motions of these defendants for summary judgment.[1]

■ In February of 1991, plaintiff's physician, Dr. Harvey Spector, diagnosed plaintiff as infected with HIV. Plaintiff alleges that Dr. Spector refused to continue to treat him after making this diagnosis. Plaintiff contacted his HMO to find a new physician who was willing to treat an HIV positive patient.

In March of 1991, plaintiff obtained an appointment with Dr. George Bradford, who allegedly also refused to treat plaintiff once he learned of plaintiff's HIV status. Dr. Bradford did refer plaintiff to Dr. Van Uidert, an infectious disease specialist, on a number of occasions.

Plaintiff continued to contact his HMO to try to locate a primary care physician who would treat him. Through a referral system unaffiliated with his HMO, plaintiff obtained an appointment with Dr. Luanne Thorndyke. Dr. Thorndyke accepted plaintiff as a patient in October of 1991 and continued to see him until July of 1992, when plaintiff left her care to begin treatment with Dr. Peter Binnion.

Dr. Binnion treated plaintiff from July of 1992 until October of 1992, when plaintiff's HMO removed Dr. Binnion from its provider list. Dr. Binnion informed plaintiff that the HMO would no longer cover the cost of prescriptions or referrals Dr. Binnion made to specialists, but that he would continue to treat plaintiff if he wished. Plaintiff declined and began treatment with a physician whose services his HMO would cover.

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party must establish that no genuine issues of material fact remain in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity & Mort. Invs.,* 951 F.2d 1399, 1404 (3d Cir.1991).

*Motion of Dr. Bradford*

Plaintiff has asserted a claim under the Rehabilitation Act against Dr. Bradford. Section 794(a) of the Rehabilitation Act, more commonly referred to by its original section number, § 504, provides that

> [n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794.

■ Dr. Bradford raises a statute of limitations defense in his motion for summary judgment. As the Rehabilitation Act contains no statute of limitations, the most closely analogous state statute of limitations applies. *Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992). Nevertheless, the date on which a federal claim accrues is determined by federal law. *Id.* at 125–126. A claim accrues and the applicable statute of limitations begins to run when the plaintiff " 'knows or has reason to know' of the injury that is the basis of the action." *Id.*

In *Chardon v. Fernandez,* the Supreme Court held that when determining the accrual date of a discrimination claim, "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (emphasis in original) (citation omitted). The respondents in *Chardon* were school administrators who were notified of their allegedly discriminatory termination several weeks before their employment actually ended. The Court held that the statute of limitations began to run

---

1. This court has previously granted summary judgment in favor of or dismissed the claims against all the other defendants in the action. *See id.* and Order of 9/10/93.

when they were told of their termination, not on the last day of their actual employment.

In a previous order in this case, this court held that Pennsylvania's two-year statute of limitations for personal injury claims applies to plaintiff's claims under the Rehabilitation Act. *See* Order of 9/10/93; *accord, Morse,* 973 F.2d at 125–127, *citing Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). As this suit was filed on June 14, 1993, any claim arising before June 14, 1991 is time-barred.

Both plaintiff and Dr. Bradford have submitted affidavits in support of their positions regarding the motion for summary judgment. While the facts alleged in these affidavits conflict in many respects, it is undisputed that Dr. Bradford is a family practitioner who saw plaintiff for the first and only time on March 18, 1991. Plaintiff states in his affidavit that when he told Dr. Bradford of his HIV status during that appointment, Dr. Bradford "expressly advised [Toney] that he did not want an HIV positive patient in the office and that [Toney] was not to come into the office for any reason." [2] While Dr. Bradford did leave referral slips in a box outside his office door for plaintiff so that he could see specialists, plaintiff never again saw Dr. Bradford.

The only allegation of discrimination against Dr. Bradford in plaintiff's complaint arises from Dr. Bradford's alleged refusal to act as Toney's treating physician. While plaintiff argues in his response to Dr. Bradford's motion that "Defendant fails to take into account the myriad additional incidents of discrimination," not one such additional incident is alleged which involves Dr. Bradford in any way.[3] Plaintiff's cause of action against Dr. Bradford arose on March 18, 1991, when Dr. Bradford allegedly informed plaintiff that he would not treat him because of his HIV status. Since this alleged refusal

occurred more than two years before June 14, 1993, when suit was filed against Dr. Bradford, the claim against him is time-barred. In light of the decision reached on this issue, this court need not address the other issues raised by Dr. Bradford in support of his motion for summary judgment.

*Motion of Dr. Binnion*

Plaintiff and Dr. Binnion have each submitted affidavits in support of their positions in regard to Dr. Binnion's summary judgment motion. The parties agree that Dr. Binnion personally treated plaintiff for approximately three months, and that the doctor-patient relationship between them ended when plaintiff's HMO notified Dr. Binnion that he would no longer be a covered provider. Dr. Binnion offered to continue treating plaintiff even after the HMO terminated his coverage, but plaintiff was unable to afford treatment on his own. Plaintiff does not dispute that Dr. Binnion sees other patients who are HIV positive or who are suffering from AIDS.

To state a claim under the Rehabilitation Act, "a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' ..., (3) that he was excluded from the [treatment] sought solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Strathie v. Department of Transportation,* 716 F.2d 227, 230 (3d Cir.1983) (citation omitted). While Dr. Binnion does not dispute that plaintiff satisfies the first factor, he does argue that plaintiff does not meet the other three.

To prevail under the Rehabilitation Act, plaintiff must establish that although he is handicapped, he is "otherwise qualified" for medical treatment. Thus, he must prove that if it were not for his handicap, he would be eligible for the treatment at issue. Dr. Binnion cites *United States v. University*

---

**2.** Dr. Bradford states in his affidavit that "Mr. Toney was advised, and he knew that if he wanted to see me for any reason, he would simply need to call to get an appointment.... I act as the primary care physician for HIV patients other than Mr. Toney and did so in 1991 and before then. I do not treat HIV positive patients differently than non-HIV positive patients." For purposes of the present motion, the court assumes,

without deciding, that plaintiff's statement is true.

**3.** Rule 9(f) of the Federal Rules of Civil Procedure provides: "For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter."

*Hospital* to support his contention that plaintiff cannot meet that statutory test. 729 F.2d 144 (2d Cir.1984). *University Hospital* held that the "otherwise qualified" language of § 504 "cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." 729 F.2d at 156. Accordingly, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'" 729 F.2d at 157. In *Johnson v. Thompson,* the Court of Appeals for the Tenth Circuit followed *University Hospital* in holding that infants were not "otherwise qualified" for treatment for spina bifida, because the treatment sought would be wholly unnecessary in the absence of the handicapping condition. 971 F.2d 1487, 1494 (10th Cir.1992). In this case, plaintiff's handicapping condition, HIV seropositivity, is the condition for which he seeks treatment. Thus, as in the *Johnson* and *University Hospital* cases, an analysis of whether plaintiff is "otherwise qualified" for treatment is meaningless.

Dr. Binnion also argues that the undisputed facts demonstrate that any alleged discrimination against plaintiff could not have been based "*solely* [on] his disability," that is, his HIV status. § 794(a) (emphasis added). In *Johnson,* the court held that for a plaintiff to maintain a claim pursuant to § 504, "the discrimination must result from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result 'solely by reason of [the] handicap.'" 971 F.2d at 1494.

Plaintiff does not contest Dr. Binnion's affidavit stating that he has other HIV positive patients, nor does plaintiff allege that Dr. Binnion acts differently towards his HIV positive patients than he acts towards his HIV negative patients. Accordingly, plaintiff cannot show that his HIV status was the sole basis for Dr. Binnion's alleged discrimination against him. As plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," all other factual disputes between the parties are rendered im-

material, and Dr. Binnion is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 (1986).

■ Dr. Binnion alleges that he is also entitled to summary judgment on the claim against him because plaintiff has challenged medical treatment decisions which are nonreviewable under § 504 of the Rehabilitation Act. The Court of Appeals for the Second Circuit has held that the Rehabilitation Act was not meant to apply to medical treatment decisions, stating that:

> [i]n view of [the] consistent congressional policy against the involvement of federal personnel in medical treatment decisions, we cannot presume that congress intended to repeal its earlier announcements in the absence of clear evidence of congressional intent to do so.... there is no such clear expression of congressional intent in either the language or legislative history of section 504.

*University Hospital,* 729 F.2d at 160 (citation omitted). This court found this reasoning persuasive in its previous opinion granting summary judgment to another defendant, Dr. Luanne Thorndyke. *See Toney,* 838 F.Supp. 201.

In response to Dr. Binnion's summary judgment motion, plaintiff repeats the argument he made in response to Dr. Thorndyke's summary judgment motion. Plaintiff contends that he does not challenge the doctor's medical treatment decisions *per se,* but rather, that he "alleges that the treatment rendered was not similar to that rendered other patients." Plaintiff alleges no facts whatsoever in support of this conclusion. His affidavit states only that under Dr. Binnion's care, he "continued to complain of numerous chronic problems for which he was unable to receive non-discriminatory attention." The *University Hospital* court concluded that this type of contention is immune from judicial review under § 504:

> Beyond the fact that no two cases are likely to be the same, it would invariably require lengthy litigation primarily involving conflicting expert testimony to determine whether a decision ... was based on a "bona fide medical judgment," however that phrase might be defined. Before rul-

**362**

ing that congress intended to spawn this type of litigation under section 504, we would want more proof than is apparent from the face of the statute. 729 F.2d at 157.

Accordingly, Dr. Binnion is entitled to summary judgment on this basis as well.

Dr. Binnion also claims that he is entitled to summary judgment on the Rehabilitation Act claim because he is not a recipient of federal funds. In light of the court's decisions on other issues raised, it need not determine this issue.

 In support of his motion for summary judgment on plaintiff's claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Dr. Binnion notes that the conduct alleged "simply do[es] not set forth a claim" of discrimination at all. The relevant provisions of plaintiff's complaint are as follows:

> 35. Plaintiff continued to treat with Defendant DR. PETER BINION (sic) since from (sic) approximately July 1992 until approximately October 1992, at which time Defendant, DR. PETER BINION, advised Plaintiff that he was no longer associated with [plaintiff's HMO] and as such Plaintiff would have to secure another primary care physician.
>
> . . . .
>
> 82. Plaintiff, WILLIAM R. TONEY, was continually denied access to service of (sic) Defendant, DR. PETER BINION, on a parity with the reasonable expectations of a patient.

Plaintiff's allegation that plaintiff could not continue as Dr. Binnion's patient after his HMO terminated its contract with the physician, read in conjunction with the affidavits of both parties, defeats a charge of discriminatory behavior by Dr. Binnion. Plaintiff admits in his affidavit that Dr. Binnion offered to continue to treat him despite the loss of his coverage. Furthermore, plaintiff's complaint does not state that the alleged denial by Dr. Binnion of services to him was based on any disability. As such, Dr. Binnion is entitled to summary judgment on the claim under the Americans with Disabilities Act as well.

*ORDER*

AND NOW, this 30th day of December, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion for summary judgment of defendant, Dr. George Bradford, is GRANTED.

It is further ORDERED that the motion for summary judgment of defendant, Dr. Peter Binnion, is GRANTED.