CARLTON v ST JOHN HOSPITAL

Docket Nos. 100940, 101905. Submitted July 25, 1989, at Detroit. Decided October 31, 1989.

Helen M. Carlton, individually and as personal representative of the estate of John J. Carlton, brought a malpractice action in Wayne Circuit Court against St. John Hospital and various doctors, alleging that John Carlton's death from cardiac arrest and respiratory distress following a knee replacement was the result of various acts of negligence. Doctors Donald F. Garver and Richard A. Berg, surgeons who performed the knee replacement operation and a thrombectomy following the knee surgery, and Grosse Pointe Orthopaedic Associates, P.C. moved for summary disposition on the basis that plaintiff's only expert witness, a cardiologist, was not qualified to testify as to the requisite standard of care. The trial court, James A. Hathaway, J., granted the motion. Plaintiff appeal by leave granted. The matter went to trial as to the remaining defendants. At the close of plaintiff's proofs, a directed verdict was granted in favor of Dr. Raymond C. Christensen, an internist and cardiologist, and St. John Hospital. Plaintiff appealed. The appeals were consolidated.

The Court of Appeals held:

1. Since the question with respect to the action against the surgeons turned on whether a surgeon should have proceeded under the circumstances and since plaintiff's expert witness admitted that he was not familiar with the standard of care for surgeons, the trial court properly held that plaintiff's expert was not qualified to testify as to the requisite standard of care. Further, since there was nothing in the record to support plaintiff's bare assertion that the requisite standard of care and a breach of the same could be established at trial through cross-examination of Garver and Berg, summary disposition in favor of those defendants was proper.

2. Plaintiff's claim that the counsel for the hospital made

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 353, 354.

Medical malpractice: necessity and sufficiency of showing of medical witness' familiarity with particular medical or surgical technique involved in suit. 46 ALR3d 275.

misrepresentations which prejudiced plaintiff is not properly preserved for appellate review.

3. The trial court properly held that plaintiff's expert was not qualified to testify as to the standard of care of a doctor employed by the hospital.

4. The trial court properly limited plaintiff's questioning of Dr. Christensen as to who was in charge of the hospital's intensive care unit.

5. The trial court did not abuse its discretion by granting directed verdicts in favor of Dr. Christensen and the hospital.

Affirmed.

WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE — STANDARD OF CARE — CROSS-EXAMINATION.

The granting of summary disposition in favor of a defendant surgeon in a medical malpractice case is proper where the plaintiff's sole expert witness is a cardiologist who admits that he was not familiar with the standard of care for surgeons as applied to the question at issue and there is nothing in the record at the time of the motion, other than plaintiff's bare assertion, to show that the requisite standard of care and a breach of the same could be established at trial by cross-examination of the defendant.

*Francis A. McCarroll,* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *David M. Ottenwess*), for defendant Berg.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*), for defendants Garver and Grosse Pointe Orthopaedic Associates.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for defendant St. John Hospital.

*Kerr, Russell & Weber* (by *C. Kenneth Perry, Jr.*), for defendant Christensen.

Before: Sawyer, P.J., and Doctoroff and R. B. Burns,* JJ.

Per Curiam. In this medical malpractice action, plaintiff appeals as of right the March 3, 1987, order of the Wayne Circuit Court granting summary disposition to defendants Berg, a vascular surgeon, Garver, an orthopedic surgeon, and Grosse Pointe Orthopaedic Associates, P.C., pursuant to MCR 2.116(C)(10) in Docket No. 100940, and the June 24, 1987, order granting a directed verdict to defendants Christensen, an internist and cardiologist, and St. John Hospital in Docket No. 101905. We affirm.

The focus of this litigation is the death of plaintiff's decedent, seventy-one-year-old John Carlton, who died at St. John Hospital on October 24, 1981, after undergoing elective left knee replacement surgery and a subsequent thrombectomy to remove a clot that had developed in his left leg. Decedent, who had been very active but who previously had one or two heart attacks in 1979 and suffered from angina and debilitating rheumatoid arthritis, saw defendant Garver prior to September, 1981, and it was decided that Garver, an employee of Grosse Pointe Orthopaedic Associates, would perform a total left knee replacement.

Garver admitted decedent to St. John Hospital on September 27, 1981. On September 28, 1981, decedent's EKGs were interpreted by a Dr. Mc-Bryan as indicating present activity as well as changes caused by an old myocardial infarction. At the request of Dr. Garver, Dr. Christensen consulted on the case on September 27 and 28. Christensen disagreed with McBryan's interpretation of the EKG and felt the changes were more likely

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

caused by an aneurysm and the old myocardial infarction rather than a present acute infarction. Decedent's history and physical examination revealed no evidence of congestive heart failure. Christensen found arteriosclerotic heart disease with stable angina, evidence of left ventricular damage, arthritis and decubitae on decedent's ankles and buttocks.

Although one hospital document stated that surgery was cancelled because of scheduling problems, Dr. Christensen testified that he postponed the knee surgery on or about September 28, 1981, because of decedent's heart condition and in order to do a cardiovascular workup. During this first admission, but after Christensen ordered that the surgery be cancelled, Garver also obtained a consultation from Dr. Yahia, an internist and rheumatologist. Yahia's report indicated possible coronary artery disease, but he ruled out a myocardial infarction. While Yahia agreed the surgery should be postponed until decedent's cardiac condition stabilized, he did not recommend against surgery.

Decedent was discharged from the first hospitalization on October 1, 1981, and thereafter went to his treating cardiologist, Dr. Steinberger. Steinberger was informed of the contemplated knee surgery, took another EKG and, comparing that with the previous one, simply told decedent he had "a lot of problems." According to plaintiff, Steinberger did not advise against the knee surgery.

Decedent reentered the hospital on October 16, 1981, with surgery contemplated for October 19, 1981. Garver again requested a cardiac consultation from Dr. Christensen. The evaluation was accomplished, however, by Christensen's associate, Dr. Formolo, on October 17, 1981. Formolo, also an internist and cardiologist, compared Steinberger's EKGs to EKGs taken at St. John Hospital and found

no changes. Nonetheless, Formolo's report noted the knee surgery posed a six percent risk of another myocardial infarction and, if that occurred, there was a fifty to sixty percent chance decedent would not survive. The report further reflected that decedent was advised of this risk.

Garver performed the knee replacement surgery on October 19, 1981. Dr. Christensen, who did not actually see decedent during the second admission until after the knee surgery, at some point interpreted an EKG taken on October 19, 1981, as revealing no changes when compared to EKGs from the first admission.

Decedent's condition took a turn for the worse. Due to coldness and lack of pulses in decedent's feet, on October 21, 1981, Garver requested a consultation from Dr. Berg. Berg determined the popliteal artery in decedent's left leg was occluded (blocked). Christensen saw decedent the following morning, as decedent was complaining of shortness of breath and chest pain. Christensen ordered another EKG and, after noting changes in the pattern, ordered that decedent be transferred to later in the day on October 22, 1981, to remove the clot in decedent's leg. Prior to the thrombectomy, Christensen had consulted with Berg and advised him that decedent was now a high risk candidate for surgery, but Berg determined that surgery was necessary. Without intervention, the lack of blood supply to decedent's leg would cause it to become gangrenous and decedent would die. Berg's only choice at this point was to remove the clot and reestablish the blood supply or amputate the leg. On October 24, 1981, decedent suffered cardiac arrest and respiratory distress and died.

In the malpractice action which followed, plaintiff named only one expert, Robert Gerisch, M.D., an internist and cardiologist.

In Docket No. 100940, plaintiff first claims that the trial court abused its discretion in finding that Dr. Gerisch was not qualified to testify regarding the standard of care for Drs. Garver and Berg. Plaintiff argues that the malpractice did not occur in the way the surgery was performed but in the fact that it was performed at all and that the standard of care was that of a general practitioner. We disagree that the decision whether to operate is determined by the standard of care of a general practitioner.

Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard. *Sullivan v Russell,* 417 Mich 398, 407; 338 NW2d 181 (1983). The qualification of the competence of expert witnesses is a matter for the discretion of the trial court, and the exercise of that discretion will not be reversed absent an abuse of discretion. *Swanek v Hutzel Hospital,* 115 Mich App 254, 257; 320 NW2d 234 (1982). While a medical witness need not specialize in the same field or subfield regarding which he is asked to testify, *Thomson v DAIIE,* 133 Mich App 375, 383-384; 350 NW2d 261 (1984), the person offering the expert witness must show that the witness possesses the necessary learning, knowledge, skill or practical experience to competently give testimony as to the appropriate standard of care about which he or she is testifying. *Siirila v Barrios,* 398 Mich 576, 591, 593; 248 NW2d 171 (1976).

In this case, Dr. Gerisch testified that he was not familiar with the standard of care for surgeons. We find that, while he may thus have been qualified as a cardiologist to give an opinion as to decedent's risk for surgery, he is not qualified to give an opinion regarding whether a surgeon per-

forming surgery in these circumstances was violating the standard of care of a surgeon, a different question. Thus, as to Drs. Garver and Berg, the key question is not whether a cardiologist would recommend surgery given the conditions in this case, but whether another surgeon would operate given these conditions. We find that only another surgeon or one who is knowledgeable about the standard of care for surgeons would be able to give an opinion regarding that question.

Plaintiff also claims that summary disposition was improper because, even if Dr. Gerisch could not testify as to the standard of care, defendants Garver and Berg themselves could testify as to the standard of care for surgeons.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim, giving the benefit of reasonable doubt to the nonmoving party. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). Summary disposition is appropriate if the court determines, on the basis of the record, that it is impossible for the claim asserted to be supported by evidence at trial. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988). The nonmoving party may not rest upon his or her allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Metropolitan Life Ins Co v Reist,* 167 Mich App 112, 118; 421 NW2d 592 (1988), lv den 431 Mich 877 (1988); MCR 2.116(G)(4). In a malpractice action, expert testimony may be elicited from a defendant physician called for cross-examination under the Michigan adverse party statute. *Rice v Jaskolski,* 412 Mich 206, 212; 313 NW2d 893 (1981).

Plaintiff failed to produce proofs in response to the motion which would show a genuine issue of

material fact as to the standard of care for surgeons and the breach of that standard of care. Plaintiff's claim that the necessary testimony "could be obtained . . . at trial" is, if not too little, too late.

In Docket No. 101905, plaintiff first claims that counsel for St. John Hospital made certain misrepresentations which were relied on by the trial court and which prejudiced plaintiff. Plaintiff raises this issue for the first time on appeal and without citation to authority.

A statement of position without supporting authority is insufficient to bring an issue before this Court. *Leitch v Switchenko,* 169 Mich App 761, 764; 426 NW2d 804 (1988). For claims which are raised on appeal, reversal is not required unless the error complained of has resulted in a miscarriage of justice. *People v Rau,* 174 Mich App 339, 341; 436 NW2d 409 (1989). We have carefully reviewed the record below and conclude that there is no miscarriage of justice.

Plaintiff claims that the trial court erred in preventing Dr. Gerisch from testifying as to the standard of care for Dr. Voytaz, a resident employee at St. John Hospital, who administered a fluid challenge to decedent. The trial court found that because Dr. Gerisch was not familiar with the foundational facts of Dr. Voytaz' status, i.e., whether he or she was a resident or intern or a specialist in a particular field, Dr. Gerisch was not qualified to testify as to the standard of care for Dr. Voytaz. We find no abuse of discretion in the trial court's ruling.

Plaintiff claims that the trial court abused its discretion in limiting plaintiff's questioning of Dr. Christensen regarding the operation of St. John Hospital's Intensive Care Unit. The trial court has broad discretion in ruling on the relevancy of

evidence submitted at trial, as well as the scope of cross-examination, and that decision will not be reversed absent an abuse of discretion. *Lincoln v Gupta,* 142 Mich App 615, 627; 370 NW2d 312 (1985), lv den 424 Mich 874 (1986); *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 96-97; 284 NW2d 126 (1979), app dis 409 Mich 868 (1980). In this case, plaintiff's counsel stated he was trying to find out who was in charge of the intensive care unit at St. John Hospital. The trial court found that plaintiff's counsel had had an opportunity to depose Dr. Christensen, but failed to do so. We find no abuse of discretion in the trial court's limiting plaintiff's questioning of Dr. Christensen on the operation of St. John Hospital's Intensive Care Unit.

Finally, plaintiff claims that the trial court erred in granting a directed verdict to Dr. Christensen and to St. John Hospital. In reviewing a trial court's ruling on a motion for directed verdict, the testimony and all legitimate inferences that may be drawn therefrom are viewed in the light most favorable to the plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986); *Feaheny v Caldwell,* 175 Mich App 291, 299-300; 437 NW2d 358 (1989). If reasonable jurors could honestly reach different conclusions, the motion should be denied and the case should be decided by the jury, since no court, under such circumstances, has authority to substitute its judgment for that of the jury. *Matras, supra,* pp 681-682. If, on the other hand, the evidence is insufficient to establish a prima facie case against the defendant, then the motion should be granted since reasonable persons would agree there is an essential failure of proof. *Feaheny, supra,* p 300.

The trial court found that there was no evidence of a standard of care, a breach of that standard of

care or proximate cause as to Dr. Christensen and St. John Hospital. We agree. During decedent's first admission, Dr. Christensen cancelled the surgery. Following the second admission, the consulting cardiologist was Dr. Formolo, not Dr. Christensen. In any case, it was Dr. Garver's choice to follow or ignore the consulting cardiologist's recommendation.

As to Dr. Christensen's alleged failure to diagnose an active myocardial infarction during decedent's first admission, Dr. Gerisch stated that two EKGs taken on September 28, 1981, evidenced changes in patterns as well as a possible aneurysm in the left ventricle of the heart. However, Gerisch acknowledged on cross-examination that he had not reviewed any prior EKG tracings from 1979, 1980 or 1981 and, thus, did not know what the previous pattern was so as to be able to make a comparison with the September 28 patterns.

Dr. Gerisch testified that it would have been better to keep decedent in the hospital and do more diagnostic work, but he did not state this was required by customary practice, that the failure to do so constituted breach, or that it had any effect on decedent's subsequent course.

As to Dr. Christensen's purported failure to consult with plaintiff and advise her of decedent's status, Dr. Gerisch had no knowledge of what communication there was other than that which was recorded in the hospital records. More importantly, Gerisch acknowledged that this had no direct impact on decedent's ultimate clinical course and the obligation was simply a moral and ethical one.

As to Dr. Christensen's failure to place the diagnosis of peripheral vascular disease on the list of diagnoses as opposed to the body of the consultation report, Gerisch could not say whether Dr.

Garver had read the entire report or just the list of diagnoses. As to Dr. Christensen's alleged failure to properly treat decedent following the knee surgery, it was Dr. Berg who determined that, without surgical intervention, decedent would die. Hence, there is an essential failure of proof with respect to all allegations concerning Dr. Christensen's conduct.

Similarly, there was no showing of malpractice by the St. John Hospital staff. The only testimony regarding Dr. Voytaz' administration of the fluid challenge was that of Dr. Christensen who approved of what she did. See *Wilson v Stilwill,* 411 Mich 587; 309 NW2d 898 (1981).

Affirmed.