Jimmie **ROBINSON, in his capacity as Personal Representative of the Estate of Laverne Robinson, Deceased, Plaintiff,**

v.

**HENRY FORD HEALTH SYSTEMS, Defendant.**

**No. 94–CV–71584–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 30, 1994.

Fatima Hassan Salam, Detroit, MI, for plaintiff.

Richard DeNardis, Detroit, MI, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This five-count handicap discrimination/medical malpractice wrongful death action is presently before the Court on Defendant's Motion for Summary Judgment. In addition to the Motion for Summary Judgment, Defendant has filed a Motion to bar Plaintiff from calling witnesses at trial because of the failure to submit witness lists as required under the Court's Scheduling Order.

Plaintiff has responded to both of Defendant's Motions to which responses, Defendant has replied. Plaintiff also has filed a Motion to voluntarily dismiss his two federal claims and to remand the state law claims to Wayne County Circuit Court.

Having reviewed and considered the parties' respective motions and the briefs and exhibits submitted in support and in opposition to the motions, and the Court finding that oral arguments are unnecessary and that the matter can be decided on the briefs, the Court is now prepared to rule on these matters. This Opinion and Order sets forth that ruling.

### II. FACTUAL BACKGROUND

This case arises out of the treatment of Plaintiff's decedent, Laverne Robinson, in the emergency room of Henry Ford Hospital in Detroit.

On November 20, 1993, 45–year–old Laverne Robinson was brought into the Henry Ford Hospital emergency room by the Detroit Fire Department's EMS ambulance at 4:45 p.m. She had been experiencing shortness of breath and possible seizure activity.

Upon arriving at the hospital, Ms. Robinson's condition was stable. She was oriented to identity, time and place, and said she generally was fine except for a dry throat. Her medical history was taken by the emergency room staff. While giving her medical history, Ms. Robinson advised that she had previously been tested positive for HIV (Human Immunodeficiency Virus), the virus which causes AIDS.

While Ms. Robinson was in the emergency room, she had one shortness of breath episode which included some dizziness and headache, which lasted approximately ten minutes. Upon examination, she was diagnosed as having an upper respiratory infection. Blood tests were run which showed virtually normal levels. A chest x-ray was also taken which showed no apparent problems.

Ms. Robinson spent approximately eleven hours in the emergency room. During that time, she was monitored continuously. Her temperature, pulse, respiration rate and blood pressure were taken three times. After remaining stable for several hours, she discharged at 4:05 a.m. on November 21st with a prescription for antibiotics and directions to see her regular doctor as soon as possible.

On November 22, 1993, at 7:30 a.m., Ms. Robinson was brought back to the emergency room in full cardiopulmonary arrest. Efforts to revive her were not successful and she was pronounced dead at 8:55 a.m.

Six months after she died, Jimmie Robinson, acting in his capacity as personal representative for Laverne's estate, initiated the instant action in Wayne County Circuit Court. Defendant subsequently removed the case to this Court on the basis of federal question jurisdiction.

### III. PLAINTIFF'S COMPLAINT

In his Complaint, Plaintiff alleges three counts of discrimination (Counts I, II and V), one count of negligence/medical malpractice (Count III) and one count of violation of the federal Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (Count IV).

With respect to the discrimination claims, Plaintiff alleges that Henry Ford Hospital violated the Michigan Handicappers Civil Rights Act, M.C.L.A. § 37.1103(b) (Count I), the Detroit City Ordinance prohibiting AIDS discrimination, Ordinance No. 33–88 (Count II), and the federal Rehabilitation Act, 29

U.S.C. § 794 (Count III). In each of these counts, Plaintiff claims that the hospital denied Laverne Robinson appropriate medical care because she was HIV positive.

In Plaintiff's negligence/medical malpractice claim (Count III) and in his EMTALA claim (Count IV), Plaintiff alleges that Ms. Robinson received inadequate an inappropriate treatment in the Hospital's emergency room.

Defendant now seeks entry of summary judgment in its favor arguing that for each Count in his Complaint, Plaintiff has failed to make out the elements of a legally cognizable claim.

## IV. DISCUSSION

### A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

★ Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

★ The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

★ The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

★ The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

★ The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

The Court will decide Defendant's Motion for Summary Judgment by application of the foregoing standards.

---

1. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

## 2. PLAINTIFF HAS FAILED TO ESTABLISH THAT LAVERNE ROBINSON WAS DISCRIMINATED AGAINST BY THE HOSPITAL BECAUSE SHE WAS "HIV" POSITIVE

As indicated above, Plaintiff alleges that Laverne Robinson was denied adequate medical treatment at Henry Ford Hospital because she was HIV positive in violation of (1) the Michigan Handicappers Civil Rights Act, (2) the federal Rehabilitation Act, and (3) Detroit City Ordinance No. 33–88.

The Michigan Handicappers Civil Rights Act provides:

(1) The opportunity to obtain employment, housing and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a handicap is guaranteed by this act and is a civil right.

(2) Except as otherwise provided in article 2 [relating to discrimination in employment], a person shall accommodate a handicapper for purposes of employment, public accommodation, public service, education or housing unless the person demonstrates that the accommodation would impose an undue hardship.

M.C.L. § 37.1102.

The federal Rehabilitation Act provides, in pertinent part:

(a) No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, ... be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

\* \* \* \* \* \*

(b) For purposes of this section, the term "program or activity" means all of the operations of—

\* \* \* . \* \* \*

(3)(A) an entire corporation, partnership, or other private organization, or as an entire sole proprietorship—

\* \* \* \* \* \*

(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation.

29 U.S.C. § 794(a) and (b).

■ Individuals who have tested positive for AIDS or the AIDS-related HIV virus are covered as handicapped or disabled individuals under both the Michigan and the federal acts. *Sanchez v. Lagoudakis*, 440 Mich. 496, 486 N.W.2d 657 (1992); *Toney v. U.S. Healthcare, Inc.*, 838 F.Supp. 201 (E.D.Pa. 1993); *Glanz v. Vernick*, 750 F.Supp. 39 (D.Mass.1990); *Casey v. Lewis*, 773 F.Supp. 1365 (D.Ariz.1991); *Doe v. District of Columbia*, 796 F.Supp. 559 (D.D.C.1992).

■ Similarly, Section 1 of Detroit City Ordinance No. 33–88 makes it an unlawful business practice

"to deny any individual the full and equal enjoyment of services, facilities, privileges, advantages and accommodations of medical and health care institutions on the basis, in whole or in part, of the fact that a person has AIDS or any condition related to AIDS."

The two statutes—as well as the City ordinance—all require proof that services were denied "because of" the plaintiff's handicap, in this case, plaintiff's decedent's HIV condition. *See, Gieseking v. Schafer*, 672 F.Supp. 1249 (W.D.Mo.1987) (in order to state a cause of action under the Rehabilitation Act, the plaintiff must show that he was otherwise qualified for the services sought and that he was excluded from services solely by reason of his handicap); *Guerriero v. Schultz*, 557 F.Supp. 511 (D.D.C.1983); *Gloss v. General Motors Corp.*, 138 Mich.App. 281, 360 N.W.2d 596 (1984); *Allen v. Southeastern Michigan Transportation Authority*, 132 Mich.App. 533, 349 N.W.2d 204 (1984).

In this case, Plaintiff has come forward with *no evidence* whatsoever to establish that Laverne Robinson was discriminated against because of her HIV-positive condition. Rather, all that Plaintiff does is assert in his Response Brief that "issues of fact exist in this case" and that he relies upon the allegations in his Complaint. [See Response Brief, pp. 3].

This is essentially the same kind of conclusory summary judgment opposition argument made by the HIV-positive plaintiff in *Toney v. U.S. Healthcare, Inc., supra.*

In *Toney,* the defendant doctor moved for summary judgment on the plaintiff's Rehabilitation Act claim arguing that there were no facts presented to establish that any alleged discrimination against the plaintiff was based upon his disability. The plaintiff countered only that because he did not allege any other reason other than his HIV status for the discrimination, his claim should survive summary judgment. The court found no merit in the plaintiff's conclusory argument and granted the defendant's motion explaining:

> [In this case] there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

838 F.Supp. at 204, *quoting, Celotex Corp. v. Catrett, supra,* 477 U.S. 317, 323, 106 S.Ct. at 2549, 2552.

Plaintiff's total lack of proof of discrimination dictates that summary judgment be granted on Counts I, II and V of Plaintiff's Complaint.

### 3. PLAINTIFF HAS FAILED TO MAKE OUT A CLAIM UNDER THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

The Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd is sometimes known as the "Anti–Dumping Act". The Act prohibits hospital emergency departments from refusing to provide treatment based only on a patient's financial inadequacy. *See Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266 (6th Cir.1990). The Act requires hospital emergency rooms to provide "an appropriate medical screening examination" to any individual who comes to the emergency department seeking examination or treatment. 42 U.S.C. § 1395dd(a). If the hospital determines that the individual has an emergency medical condition, it cannot transfer or discharge the patient until the condition is stabilized. 42 U.S.C. § 1395dd(b)(1) and (c)(1).

An "appropriate medical screening" under the EMTALA means a screening that the hospital would have offered to any paying patient. *Cleland v. Bronson Health Care Group, Inc., supra,* 917 F.2d at 268. Where the plaintiff fails to establish that the screening provided was in any way different than what would have been offered to any other patient, or fails to present proof that his condition at discharge would not have been considered stable for any other patient, no EMTALA claim is made out. *Id.* at 269.

In this case, the medical records presented by Defendant shows that Plaintiff *was* provided a full medical screening examination, including blood tests and x-rays, she was monitored constantly for nearly 12 hours, and ultimately determined by the medical staff to be stable before she was released. Plaintiff has come forward with *no* evidence to contradict Defendant's evidence. Therefore, summary judgment will be granted on Count IV, as well.

### 4. PLAINTIFF'S FAILURE TO HAVE ANY EXPERT EVIDENCE TO ESTABLISH THE STANDARD OF CARE OWED TO PLAINTIFF MANDATES ENTRY OF SUMMARY JUDGMENT ON COUNT III OF THE COMPLAINT

In order to establish a legally cognizable medical malpractice claim under Michigan law, the plaintiff must show:

1. Defendant owed plaintiff a duty to render medical care within the appropriate standard of care;

2. The standard of care owed to plaintiff was breached;

3. The plaintiff suffered injury; and

4. The injury was proximately caused by the breach of the standard of care.

*Carlton v. St. John Hospital,* 182 Mich.App. 166, 451 N.W.2d 543 (1989).

To establish what the standard of care owed to the plaintiff was and whether it

was breached requires expert testimony. *Id.,* 182 Mich.App. at 171, 451 N.W.2d 543.

In this case, Plaintiff never filed or served upon Defendant *any* witness list—lay or expert—as required under the Court's June 30, 1994 Scheduling Order. The Court's Scheduling Order states that "no witness may be called for trial unless that witness's name is listed by the respective date set forth herein without order of the court upon showing that the witness sought could not reasonably have been listed as of this date."

Plaintiff counters that his one medical expert, Dr. Khalil Jiraki, a pathologist with the Wayne County Medical Examiner's Office, was identified in his answers to Defendant's interrogatories and that he believes that that is sufficient to satisfy the Court's Scheduling Order requirements.

Even if the Court were to accept Plaintiff's interrogatory answer as a sufficient "Expert Witness List" listing of Dr. Jiraki, the Court has reviewed the copy of Dr. Jiraki's report submitted by Plaintiff with his Response Brief [Plaintiff's Ex. A] and the Court finds that Dr. Jiraki's report says nothing about the standard of care for emergency room treatment of patients and in no way suggests that Ms. Robinson was provided inadequate treatment at Henry Ford Hospital. Dr. Jiraki's report in no way even criticizes the care provided in this case.

Moreover, under Michigan law, a specific statute sets forth the qualifications for medical malpractice expert witnesses.[2]

M.C.L. § 600.2169 provides:

(1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine ... and meets both of the following criteria:

(a) Specializes, or specialized at the time of the occurrence which is the basis for the action, in the same specialty or a related, relevant area of medicine ... as the specialist who is the defendant in the medical malpractice action, [and]

(b) Devotes, or devoted at the time of the occurrence which is the basis for the action, a substantial portion of his or her professional time to the active clinical practice of medicine ... in the same specialty or a related, relevant area of health care as the specialist who is the defendant in the medical malpractice action.

In this case, the plaintiff is charging negligent treatment of Laverne Robinson by the doctors and nurses in the Henry Ford Hospital emergency room. Emergency medicine is a recognized specialty which has its own separate Board certification. Therefore, in order to be qualified as an expert witness in this case, plaintiff would have to have an expert who is an emergency medicine specialist who devotes a substantial portion of his time to a practice in emergency medicine.

The only medical expert specifically identified by Plaintiff is Dr. Jiraki, a *pathologist* with the Wayne County Medical Examiner's Office. He is not competent to testify as an expert on the standard of care for an emergency room physician or nurse.[3]

For these reasons, the Court finds that Plaintiff cannot withstand summary judgment on his medical malpractice claim in Count III.

## CONCLUSION

For all of the reasons stated in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED. Accordingly,

---

2. Fed.R.Evid. 601 recognizes,

Every person *is* competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

3. Plaintiff also stated in his interrogatory answer that he also intends to call "an infectious disease" expert, however, that purported expert has never been identified. Even if Plaintiff were to now name his infectious disease expert, as discussed in the text, such an expert's testimony would not suffice to establish the standard of care for emergency medicine.

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED in its entirety with prejudice.[4]

**4.** The Court's decision on Defendant's Motion for Summary Judgment renders MOOT Defendant's Motion to Bar Plaintiff from Calling any Witnesses at Trial and Plaintiff's Motion to Voluntarily Dismiss Counts IV and V [i.e., the two federal claims] and to Remand the Case to Wayne County Circuit Court.

