Howard D. HAMLYN, on his own behalf and on behalf of all those similarly situated, Plaintiff,

v.

ROCK ISLAND COUNTY METROPOLITAN MASS TRANSIT DISTRICT, and Loren A. Dussliere, Cecil L. Hickman, Robert E. Jensen, Laurence W. Lorensen, and John R. Hunt, in their individual capacities, Defendants.

No. 97–4015.

United States District Court, C.D. Illinois.

Oct. 23, 1997.

Harvey Grossman, Lauren B. Raphael, Roger A. Leishman, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for Plaintiff.

Bernard C. Gillman, Gillman, Konecky & Norman, Rock Island, IL, for Defendants.

### ORDER

McDADE, District Judge.

Plaintiff, Howard D. Hamlyn ("Hamlyn"), brings this action on behalf of himself and all those similarly situated against Defendants Rock Island Metropolitan Mass Transit District ("Metro Link") and its individual members for their alleged policy of denying equal access to their reduced fare program solely because Plaintiff has AIDS. On July 16, 1997, this Court certified the following class for purposes of declaratory and/or injunctive relief only:

> All persons who are now or will be otherwise eligible to participate in Metro Link's Reduced Fare Program but who are or will be excluded from participation solely because they have AIDS.

The Court also found that Plaintiff has standing to bring this action on behalf of himself and the class. In particular, the Court found that Plaintiff did not need to apply for the program because Metro Link's written policy is "so facially discriminatory" that it would "deter a reasonable person in Plaintiff's position from even completing the application process." Preliminary Ruling at 5.

Currently before the Court is Plaintiff's Motion for Partial Summary Judgment on liability as to the three individual claims against Metro Link. The Motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 56(d). The Motion is fully briefed, and after consideration of the pleadings and statements of undisputed facts filed pursuant to Local Rule 7.1(D), this Court finds that the Motion should be GRANTED.

## UNDISPUTED FACTS

Effective June 1997, Local Rule 7.1(D) was revised to state:

(D) *Summary Judgment.*

(1) Any party filing a motion for summary judgment shall file and serve with the motion a *separate* document (entitled "Statement of Undisputed Facts") which *numerically* lists each undisputed fact relied upon in the memorandum of law in support of the motion, with citation to discovery material or affidavits that support the contention that the fact is undisputed. If a fact is not numerically listed, it will not be considered by the court.

(2) Similar to answering a complaint, in response the party opposing the summary judgment, shall file a *separate* document (entitled "Response to [S]tatement of Undisputed Facts") which *numerically* responds to each of the movant's undisputed facts. The party will either *admit* or *contest* the fact. If the fact is contested, the party (1) shall submit a short and plain statement of why the fact is in dispute and (2) cite to discovery material or affidavits that support the contention that the fact is disputed.

(3) The party opposing the summary judgment motion may also—if necessary—file a *separate* document (entitled "[S]tatement of [A]dditional Undisputed Facts") which numerically lists each *additional* fact relied upon in the memorandum of law in response to the movant's summary judgment motion, with citation to discovery material or affidavits that support the contention that the additional fact is undisputed. If the party opposing summary judgment relies on additional facts in response and the facts are not numerically listed, they will not be considered by the court.

■ Although Plaintiff's Rule 7.1 Statement of Undisputed Facts was filed in April,

before the effective date of these revisions, it complies with the new rule. Defendants' Rule 7.1 "Response to Statement of Undisputed Facts," however, does not comply with the new Rule 7.1(D)(2), even though it was filed on September 2, 1997, well after the effective date of the revisions to the local rules. First, Defendants' Statement of Facts is not a response to Plaintiff's Rule 7.1 Statement, but rather a new set of facts which Defendants contend are in "dispute." Second, Defendants' Statement is not set out like an answer to a complaint, because it does not directly admit or deny whether the facts asserted by Plaintiff are "undisputed." Instead, the "response" that Defendants have filed is more like a "Statement of Additional Undisputed Facts." Defendants, however, have labeled their statement as one filed "pursuant to local rule 7.1(D)(2)." As a response, this Statement does not comply with Rule 7.1(D)(2). Accordingly, this Court will treat: Plaintiff's Statement of Undisputed Facts as admitted. Pursuant to Rule 56(d), the Court further finds that the following facts exist without substantial controversy and will be deemed established at the trial of this action.

The Seventh Circuit has addressed this issue several times, stating: "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Richards v. Combined Ins. Co. of America,* 55 F.3d 247, 251 (7th Cir.1995). The Seventh Circuit has "endorsed the exacting obligation [local] rules impose on a party contesting summary judgment to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute ..." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994). The Seventh Circuit has "repeatedly ... sustained the entry of summary judgment where "the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.* at 922. This is such a case. Accordingly, for purposes of this motion, the Court takes as undisputed each fact alleged in Plaintiff's Rule 7.1 Statement. These facts are as follows.

Plaintiff Howard Hamlyn is a resident of Moline, Illinois, who has Acquired Immune Deficiency Syndrome ("AIDS"). Plaintiff's Statement of Undisputed Facts ("Stmt.") ¶ 1. Defendant Rock Island County Mass Transit District ("Metro Link") is a municipal corporation organized under the laws of Illinois for the purpose of providing mass transportation services to Rock Island County. *Id.* at ¶ 2. Metro Link is a public entity as defined by Title II of the Americans with Disabilities Act ("ADA"). *Id.* at ¶ 3. Metro Link has received federal funding and therefore is a program covered by the Rehabilitation Act. *Id.* at ¶ 4.

AIDS is caused by the Human Immunodeficiency Virus ("HIV"). *Id.* at ¶ 5. This virus attacks cells in the immune system causing a progressive impairment of the immune system. *Id.* Individuals whose immune system is impaired by HIV become susceptible to opportunistic infections. *Id.* Once the immune system becomes severely suppressed, a patient is diagnosed as having AIDS. HIV infected persons are considered to have AIDS when the number of their CD4+ lymphocytes drops below a certain level or when they develop one of twenty-six clinical conditions. *Id.* at ¶ 6.

Mr. Hamlyn, the Plaintiff, has AIDS. AIDS causes Mr. Hamlyn to have significant difficulty walking more than one block; significant difficulty boarding or alighting from a standard bus; significant difficulty standing in a moving vehicle; and significant difficulty using stairs or an escalator. *Id.* at ¶ 14. Moreover, under federal law, municipal transit authorities such as Metro Link which receive federal financial assistance must offer reduced fare rates for persons with disabilities. *Id.* at ¶ 7. Defendant Metro Link has a Reduced Fare Program that makes transportation services available at a reduced rate for persons with disabilities. *Id.* at ¶ 8. Metro Link's Reduced Fare Program uses a form labeled the "Reduced Fare Application For Persons with Disabilities" ("Application Form"). *Id.* at ¶ 9. The Application Form states, "WHO DOES NOT QUALIFY: A.

Applicants whose sole disability is ... AIDS ...." *Id.* at ¶ 10. Under the heading "Instructions to Physician, Psychologist, Optometrist or Audiologist," the Application Form states, "Applicants do not qualify if their sole disability is ... AIDS ...." *Id.* at ¶ 11. The Application Form states that applicants for Metro Link's Reduced Fare Program "do not qualify on the basis of income or financial status." *Id.* at ¶ 12. Under the heading "Instructions to Physician, Psychologist, Optometrist or Audiologist," the Application Form states that "Applicant is eligible for a Reduced Fare Card because of a DYSFUNCTION causing: (Please place an "X" in the appropriate spaces) Significant difficulty walking more than one block. Significant difficulty in boarding or alighting from a standard bus. Significant difficulty in using stairs or an escalator. Inability to read or understand information signs or symbols. Inability to hear announcements by operators or attendants in public transit vehicles." *Id.* at ¶ 13.

AIDS causes Mr. Hamlyn to have significant difficulty walking more than one block; significant difficulty boarding or alighting from a standard bus; significant difficulty standing in a moving vehicle; and significant difficulty using stairs or an escalator. *Id.* at ¶ 14. Mr. Hamlyn's personal physician would certify to the facts regarding his condition listed in the previous paragraph. *Id.* at ¶ 15. Metro Link admits that Mr. Hamlyn may have a condition that constitutes a dysfunction that will satisfy eligibility for the Reduced Fare Program. *Id.* at ¶ 16.

## DISCUSSION

I. *AIDS Is A Disability Under The Americans With Disabilities Act and The Rehabilitation Act.*

■ AIDS is a disability under federal law. Both the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, have been held by the federal courts to prohibit discrimination against persons with AIDS. *See, e.g., Gonzales v. Garner Food Services,* 89 F.3d 1523, 1526 (11th Cir.1996) (noting that ADA regulations define "disability" to include HIV disease); *Doe v. Garrett,* 903

F.2d 1455, 1458–59 (11th Cir.1990)("it is well established that infection with AIDS constitutes a handicap for purposes of the [Rehabilitation] Act"); *Gates v. Rowland,* 39 F.3d 1439, 1446 (9th Cir.1994) (person infected with HIV virus is individual with a disability within meaning of Rehabilitation Act, as in ADA); *Robinson v. Henry Ford Health Systems,* 892 F.Supp. 176, 180 (E.D.Mich.1994), *aff'd* 86 F.3d 1156 (6th Cir.1996) (individuals with AIDS or AIDS-related HIV virus are covered as disabled under Rehabilitation Act); *Anderson v. Gus Mayer Boston Store of Del.,* 924 F.Supp. 763, 774–75 (E.D.Tex. 1996) (AIDS is a per se disability under the Rehabilitation Act). In fact, both HIV-positive status and AIDS are defined as disabilities under the Department of Justice regulations promulgated pursuant to the ADA. 28 C.F.R. § 36.104(1)(iii). The legislative history of the ADA also discusses AIDS and HIV infection as disabilities covered by the ADA. H.R.REP. NO. 101–485(II), 1990 U.S.C.C.A.N. 303, 334; 136 Cong.Rec. H2442 (May 17, 1990). The language of the ADA, itself, 42 U.S.C. § 12101(2), defines disability in terms identical to those of the Rehabilitation Act in section 706(8)(B). Thus, it stands to reason that AIDS and the AIDS-related HIV virus are disabilities under both the ADA and the Rehabilitation Act, as the federal courts cited above have found.

II. *Metro Link Is Liable To Mr. Hamlyn And The Class Of Plaintiffs He Represents For Discriminating Against Persons With AIDS By Excluding These Persons From Participation In The Reduced Fare Program.*

Mr. Hamlyn has AIDS. He, therefore, has a disability protected by the ADA and the Rehabilitation Act. Mr. Hamlyn alleges that Metro Link has discriminated against him in violation of the ADA, the Rehabilitation Act, and the Fourteenth Amendment Equal Protection Clause. The Court agrees.

A. *The Rehabilitation Act*

■ The Rehabilitation Act requires that disabled people not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving federal financial assistance..." 29 U.S.C. § 794(a). To prove that he is entitled to relief under the Rehabilitation Act, Mr. Hamlyn must show that: (1) the defendant is a recipient of federal financial assistance; (2) the plaintiff has a disability within the meaning of the Act; (3) the plaintiff is "otherwise qualified" for the program; and (4) the plaintiff is being subjected to discrimination solely by reason of disability. *Knapp v. Northwestern University*, 101 F.3d 473, 478 (7th Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997). Mr. Hamlyn argues that he is entitled to summary judgment as to liability under the Rehabilitation Act because there is no genuine issue of fact regarding any of these four elements. The Court agrees.

First, Metro Link has conceded that it is a program which receives federal funding. *See* Answer ¶ 7; Stmt. ¶ 4. It is, therefore, covered by the Rehabilitation Act. Second, Mr. Hamlyn has AIDS. Stmt. ¶ 14. AIDS is a disability protected by the Rehabilitation Act. *See* cases cited *supra* at 1129. Third, Mr. Hamlyn's condition satisfies the disability qualifications for the Metro Link Reduced Fare Program *but for* the fact that he has AIDS. Some further explanation regarding this last point regarding Mr. Hamlyn's "qualifications" is necessary.

The issue in this case is not whether Mr. Hamlyn is "qualified" for the Reduced Fare Program. Here, there is no real dispute that Mr. Hamlyn satisfies the necessary qualifications for participation in the Program, by reason of his illness, because he is "unable without special facilities or special planning or design to utilize mass transportation facilities and services as effectively as persons who are not so affected." *See* Stmt. ¶¶ 13–16, Exh. A. Mr. Hamlyn, as alleged, has significant difficulty walking more than one block, boarding or alighting from a standard bus, and standing in a moving vehicle, using stairs or an escalator. Stmt. ¶ 14. These physical impairments are a direct result of his disability, namely, AIDS.

It is the AIDS exclusion that is at issue in this case, not Mr. Hamlyn's qualifications, *per se.* Metro Link, however, does not acknowledge, either on the face of the Program Application or in its briefs, that its Program contains an exclusion. In fact, Metro Link does not even acknowledge that this Court has previously found that "[b]y specifically excluding individuals with AIDS from the Program, it leaves the impression that persons with AIDS cannot take advantage of the reduced fare pass in spite of being able to meet the other requirements of the program." Preliminary Ruling at 8. As the Court suggested in its preliminary ruling, the Program Application makes the condition of having AIDS, *inter alia*, a nonqualifying factor, despite the presence of other qualifying factors which result from having AIDS. Naming the condition of AIDS as a nonqualifying factor rather than an exclusion does not change the fact that *but for* having AIDS, Mr. Hamlyn would qualify for the Reduced Fare Program. The Court has already found that this exclusion is discriminatory. Because Mr. Hamlyn is "otherwise qualified" to participate in the Program, the Court finds that the third element of the Rehabilitation case is satisfied.

The fourth element of a Rehabilitation Act case requires a plaintiff to prove that he or she is being subjected to discrimination solely by reason of a particular disability, such as AIDS. The Court is, therefore, faced with a fairly simple issue: does the Metro Link Reduced Fare Program, on its face, discriminate against persons with AIDS under the Rehabilitation Act, solely because these persons have AIDS? The simple answer is that it does. It is obvious from the face of the Reduced Fare Card Application that Metro Link conditions its applicants' "qualifications" on whether or not they possess AIDS, are pregnant, are obese, or are impaired due to alcohol or drug abuse. By excluding disabled persons with AIDS, the Program treats other disabled persons without AIDS, who are otherwise similarly situated, more favorably than those persons with AIDS. There appears to be no apparent reason for such exclusion, either on the face of the Program or in Metro Link's briefs. The Rehabilitation Act expressly prohibits exclusion from the participation in, and denial of the benefits of any program or activity re-

ceiving Federal financial assistance solely by reason of a disability. 29 U.S.C. § 794(a). The Metro Link Program does just that. This Court therefore finds that Metro Link's Reduced Fare Program, on its face, violates the Rehabilitation Act.

### B. The Americans With Disabilities Act ("ADA")

▮▮▮ Title II of the ADA is expressly modeled after § 504 of the Rehabilitation Act. 42 U.S.C. § 12134(b). Thus, the requirements for a claim under the ADA are virtually identical to those requirements for a claim under the Rehabilitation Act. The elements of a claim under the ADA are: (1) the plaintiff has a disability within the meaning of the Act; (2) the plaintiff is otherwise qualified for the program; (3) the plaintiff is being subjected to discrimination by reason of disability. *Palmer v. Circuit Court of Cook County Social Serv. Dept.*, 905 F.Supp. 499, 506 (N.D.Ill.1995) (breaking out a three part test from the terms of 42 U.S.C. § 12102(2)). Having found that Metro Link is liable under the Rehabilitation Act for discriminatorily excluding persons with AIDS from participation in the Reduced Fare Program, it does not require a great leap of logic to find that Metro Link is also liable under the ADA.

Mr. Hamlyn has a disability under the ADA, because he has AIDS. *See* 42 U.S.C. § 12101(2); 28 C.F.R. § 35.104(4)(*l*)(ii). Mr. Hamlyn is "qualified" for the Program, but for the fact that he has AIDS, because it is undisputed that the AIDS infection renders Mr. Hamlyn physically "unable ... to utilize mass transportation facilities and services as effectively as persons who are not so affected." *See* Stmt., Exh. A. The ONLY reason that Mr. Hamlyn is unable to participate in the Reduced Fare Program is because he has the disability of AIDS, rather than any other non-excluded disability under the Program. This exclusion is discriminatory under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Although the Program defines AIDS as a nonqualifying factor, such definition is essentially an illegal exclusion based on a legal disability, and therefore constitutes discrimination in violation of the ADA.

### C. The Fourteenth Amendment Equal Protection Clause

▮ The last issue before the Court is whether Metro Link's Reduced Fare Program violates the Fourteenth Amendment Equal Protection Clause. As the Court alluded to earlier, we find that the Reduced Fare Card Program, on its face, treats similarly situated disabled persons differently by applying an illegal classification, namely, by excluding persons with the disability of AIDS, *inter alia*, from participation in the Program, without even a rational explanation, let alone a "rational basis," for doing so. It seems to this Court that Metro Link's Reduced Fare Program, even when assessed under the least exacting standard, the rational basis test, utterly fails to satisfy the requirements of the equal protection clause of the Fourteenth Amendment. There is simply no conceivable rational explanation for, nor any legitimate governmental interest in, excluding persons with AIDS from obtaining a reduced fare card to travel by mass transportation during off hours of the day.[1] Nor has Metro Link offered one. A brief look at

---

1. The exclusion of pregnant women, obese persons, and those with drug and alcohol related diseases is even more mind boggling. What do all of these persons have in common, except the fact that they may have trouble walking or standing on the bus? And why would Metro Link exclude them from the benefits of a reduced fare? No explanation has been offered, and we certainly cannot think of one—at least not a legitimate reason. It has occurred to the Court that uneducated minds might believe that each of the excluded disabilities are caused by a voluntary choice rather than by misfortune or accident. As most people know, however, AIDS can be the product of blood transfusions, dental work, and birth; pregnancy the result of rape, incest, or simply miscalculation; obesity the result of thyroid or other physiological problems; and drug and alcohol related diseases the product of other involuntary choices. However, even if this were the proffered reason for the exclusion, this Court would not find that such an exclusion is rationally related to a legitimate government purpose.

the requirements for establishing a Fourteenth Amendment equal protection violation under section 1983 shows that Mr. Hamlyn has more than adequately pled and proved that Metro Link violated his Fourteenth Amendment rights.

■ Title 42 U.S.C. § 1983 provides relief for private persons who have had their federally protected constitutional rights violated by a state actor. To establish a section 1983 claim, a plaintiff must allege (1) that plaintiff held a constitutionally protected right, (2) that plaintiff was deprived of this right in violation of the Constitution, (3) that defendant intentionally caused this deprivation, and (4) that defendants acted under color of state law. *See Doe v. City of Chicago,* 883 F.Supp. 1126, 1138 (N.D.Ill.1994). Mr. Hamlyn argues that Metro Link's Reduced Fare Program, on its face, violates his constitutionally protected right to equal protection of the laws.

■ To allege an equal protection violation, a plaintiff must aver (1) that he or she is a member of a protected class, (2) that he or she is otherwise similarly situated to members of the unprotected class and (3) that he or she was treated differently from members of the unprotected class. *Id.* Many cases also indicate that a plaintiff must also allege and prove that the defendant acted with discriminatory intent. *Id.* However, intent does not need to be alleged or proved in a case where a government program, policy or statute is challenged on its face.

Mr. Hamlyn alleges that Metro Link, a municipal transit authority operating under color of state law, has violated his Fourteenth Amendment right to equal protection of the laws. In particular, Mr. Hamlyn has alleged that Metro Link has excluded him from participating in the benefits granted to other disabled persons based solely on his membership in the group of disabled persons with AIDS. Mr. Hamlyn challenges the Metro Link policy on its face.

■ The equal protection clause does not only protect "fundamental rights" and does not only protect against suspect classifications such as race, it also protects citizens from arbitrary or irrational state action. Ab-

sent a "suspect classification" such as race, courts review legislative action under the highly deferential "rational basis" standard. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446–47, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). In cases where the particular law or policy is fair on its face, but is applied in a way that treats similarly situated individuals differently, the equal protection clause requires plaintiffs to allege and prove the presence of an unlawful intent to discriminate against the plaintiff for an invalid reason. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). Thus, the unequal application of a law or policy is not enough. *See also Batra v. Bd. of Regents,* 79 F.3d 717, 721 (8th Cir.1996). The goal of requiring intent is to protect the government from liability for mere negligence in the application of otherwise valid laws. Thus, in order to give rise to a constitutional grievance, a departure from the norm must be rooted in design and not derive merely from error or fallible judgment. *See Esmail v. Macrane,* 53 F.3d 176, 180 (7th Cir.1995) (C.J. Posner) (refusal to renew liquor license actionable under equal protection clause if defendants' action "was a spiteful effort to 'get' [plaintiff] for reasons wholly unrelated to any legitimate state objective.").

■ Facial challenges to a law, however, are different. When a law can be shown, on its face, to classify persons similarly situated for different treatment without any legitimate basis, rather than in its application or its impact, then the question of discriminatory intent is subsumed by the determination that the classification established by the terms of the challenged law or policy is, itself, discriminatory. Presumably, the state actors designing a discriminatory classification, and then giving it the force of law, intended the resulting discrimination. Thus, as Professors Nowak and Rotunda note in their treatise, Constitutional Law

> A classification within a law can be established ... "on its face." This means that the law by its own terms classifies persons for different treatment. In such a case there is no problem of proof and the court can proceed to test the validity of the classification by the appropriate standard.

J. Nowak and R. Rotunda, Constitutional Law § 14.4 (1992). In other words, analysis of facial challenges alleging an improper classification involves only two steps: (1) plaintiff must first show that the challenged statute or policy, on its face, results in members of a certain group being treated differently from other persons based on membership in that group, *Jones v. Helms,* 452 U.S. 412, 423–24, 101 S.Ct. 2434, 2442–43, 69 L.Ed.2d 118 (1981); and (2) if it is demonstrated that a cognizable class is treated differently, then the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified. *Plyler v. Doe,* 457 U.S. 202, 217–18, 102 S.Ct. 2382, 2395–96, 72 L.Ed.2d 786 (1982). The defense, if any, to a facial challenge is, therefore, not whether the defendants intended to discriminate. Clearly, they did. The defense is rather that the defendants intended to discriminate for legitimate reasons, and the classification established on the face of the law is rationally related to those legitimate government objectives.

The issue, therefore, is not whether Mr. Hamlyn is a member of a protected class; he is not—at least under the federal case law the Court has reviewed; nor is the issue whether Metro Link "intended" to discriminate against Mr. Hamlyn. Rather, the issue is simply whether Mr. Hamlyn belongs to a group of individuals classified for different treatment under the Metro Link Program than otherwise similarly situated disabled individuals, simply because he and others like him share a certain characteristic, namely, the condition of AIDS; and, if so, whether the Metro Link Program's policy of excluding such individuals based on the AIDS condition is rationally related to a legitimate governmental purpose. The Court finds that Mr. Hamlyn does belong to a group of individuals with AIDS who are being classified for different treatment than other disabled persons by being denied the benefits of a federally funded, public reduced fare program, and this classification utterly fails to

relate to any conceivable *legitimate* governmental purpose. In fact, Metro Link has not even attempted to offer a legitimate purpose for such an exclusion. It merely argues that it did not intend to discriminate. This is not the point, as we have already said. The Court, therefore, finds that Metro Link has violated Mr. Hamlyn's equal protection rights under the Fourteenth Amendment, and by extension, has violated the equal protection rights of all those who properly belong to the class of individuals previously certified by this Court.

### CONCLUSION

The Clerk of the Court is, therefore, directed to GRANT partial summary judgment pursuant to Rule 56(d), in favor of Plaintiff Hamlyn and against Metro Link.[2] (Doc. # 20–1). Plaintiff Hamlyn's Motion for Oral Argument and a Hearing (Doc. # 20–2) is DENIED. This case is referred to Magistrate Judge Kauffman for further proceedings consistent with this Order.

---

**2.** The partial summary judgment in this case is limited to liability on Mr. Hamlyn's individual claims against Metro Link, because that is what Plaintiff's Motion requests. It, therefore, does not address (a) the scope of relief on Mr. Hamlyn's

claims; (b) class action claims; or (c) claims against the individual defendants. However, the Court believes that the class action claims would also be subject to the rulings set forth herein.