McCLELLAN v COLLAR (ON REMAND)

Docket No. 185809. Submitted November 23, 1999, at Grand Rapids. Decided March 31, 2000, at 9:05 A.M.

Daniel and Ruby McClellan brought an action in the Ingham Circuit Court against Alonso Collar, M.D., and Thoracic Cardiovascular Institute of Mid-Michigan (TCI) seeking damages for complications following aortic valve replacement surgery performed by Dr. Collar on Daniel McClellan that allegedly resulted from the surgery being performed while Mr. McClellan was suffering from a severe infection. The trial court, Carolyn Stell, J., ruled that the plaintiffs' expert witness Dr. Andrew M. Rosenblum, a cardiologist, was not qualified to give expert testimony with respect to the issue of the negligence of Dr. Collar, a cardiovascular surgeon. Thereafter, the trial court granted a directed verdict for TCI and granted summary disposition for Dr. Collar. The plaintiffs appealed, raising several issues, including the question whether the trial court erred in refusing to permit Dr. Rosenblum to testify concerning the applicable standard of care with respect to preoperative and postoperative care of aortic valve replacement surgery patients and to the decision whether aortic valve replacement surgery is appropriate under the circumstances presented in this case. The Court of Appeals, HOEKSTRA, P.J., and MURPHY and SMOLENSKI, JJ., relying on the holding in *McDougall v Eliuk*, 218 Mich App 501 (1996), reversed, holding that the question whether Dr. Rosenblum was qualified to testify as an expert witness was governed by the provisions of MRE 702 and that under MRE 702 Dr. Rosenblum was qualified because he had indicated that he was familiar with the national standard of practice governing cardiovascular surgeons. Unpublished opinion per curiam of the Court of Appeals, issued April 11, 1997 (Docket No. 185809). The defendants sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for reconsideration in light of *McDougall v Schanz*, 461 Mich 15 (1999). 461 Mich 896 (1999).

On remand, the Court of Appeals *held*:

1. The Supreme Court in *McDougall v Schan* held that § 2169 of the Revised Judicature Act, MCL 600.2169; MSA 27A.2169, is an enactment of substantive law that does not impermissibly infringe the Supreme Court's constitutional rule-making authority over prac-

tice and procedure and that, accordingly, the provisions of MRE 702 must yield to the provisions of § 2169.

2. At the time relevant to this matter, § 2169 provided that if the defendant in a medical malpractice case was a specialist, expert testimony concerning the appropriate standard of care could be given only by a licensed physician who specialized in the same specialty or a related, relevant area of medicine as the defendant and devoted a substantial portion of professional time to the active clinical practice of medicine or the instruction of students in an accredited medical school in the same specialty or a related, relevant area of health care as the defendant.

3. It is clear that, at the time pertinent here, the Legislature intended to allow a specialist in one field to testify against a specialist in another field where the two fields were connected to each other and had practical value to one another and where the proposed expert practiced or taught in the associated, pertinent area of health care.

4. For the purposes of this case, cardiology and cardiovascular surgery are sufficiently associated to one another and have sufficient practical value to one another to meet the requirements of § 2169 as they existed at the time pertinent to this case.

5. The record clearly established that Dr. Rosenblum, as a cardiologist, was by his education, training, and practice familiar with the standard of care of board-certified cardiovascular surgeons with regard to when and under what circumstances aortic valve replacement surgery should or should not be done and with the preoperative aspects of aortic valve replacement. Accordingly, the trial court should have permitted Dr. Rosenblum to give expert testimony concerning the standard of care for board-certified cardiovascular surgeons.

Reversed and remanded.

WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE ACTIONS — RELATED SPECIALTIES.

Section 2169 of the Revised Judicature Act before its amendment by 1993 PA 78 provided that if the defendant in a medical malpractice case was a specialist, expert testimony concerning the appropriate standard of care could be given only by a licensed physician who specialized in the same specialty or a related, relevant area of medicine as the defendant and devoted a substantial portion of professional time to the active clinical practice of medicine or the instruction of students in an accredited medical school in the same specialty or a related, relevant area of health care as the defendant; it is clear that before the 1993 amendment the Legislature intended to allow a specialist in one field to testify against a specialist in

another field where the two fields were connected to each other and had practical value to one another and where the proposed expert practiced or taught in the associated, pertinent area of health care (MCL 600.2169; MSA 27A.2169).

*Farr & Oosterhouse* (by *Joel E. Krissoff, John R. Oostema,* and *Michelene B. Pattee*), for the plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for the defendants.

Before: HOEKSTRA, P.J., and MURPHY and SMOLENSKI, JJ.

PER CURIAM. This medical malpractice case is before us on remand from our Supreme Court for reconsideration of a previously decided issue in light of *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999). 461 Mich 896 (1999). After further review, we affirm our prior decision to reverse the trial court's ruling that Dr. Andrew Rosenblum, a cardiologist, was not qualified to render expert testimony with respect to the issue of the negligence of defendant Dr. Alonso Collar, a cardiovascular surgeon.

The facts of this case were set out in our previous opinion, *McClellan v Collar*, unpublished opinion per curiam of the Court of Appeals, issued April 11, 1997 (Docket No. 185809):

Plaintiff Daniel McClellan had a history of vascular aortic stenosis. On December 4, 1991, he was examined by Dr. Collar, who recommended that he have aortic valve replacement surgery and scheduled the surgery for December 17, 1991. On December 13, 1991, McClellan's wife, plaintiff Ruby McClellan, drove him to Ingham Medical Center's emergency room because he was experiencing coughing, a runny nose, fever and chills. Dr. Daryl Melvin, an employee of TCI [Thoracic Cardiovascular Institute of Mid-Michigan], admitted McClellan into the hospital. From the time of his

admission until the December 17, 1991, surgery, McClellan continued to experience the same symptoms and, although he had a temperature of 101.4 degrees the night before the surgery, Dr. Collar performed the surgery as scheduled. After his discharge on December 25, 1991, McClellan's condition continued to deteriorate in that he could not breathe and he developed an egg-like formation near the top of his chest. On December 29, 1991, Dr. J. Jung operated to alleviate these conditions. Plaintiffs' theory of liability was that McClellan's second surgery was necessary because of Dr. Collar's and Dr. Melvin's negligence in that they improperly went ahead with the first surgery even though McClellan was suffering from a severe infection.

The trial court granted a directed verdict in favor of defendant TCI and, on the same day, granted summary disposition to defendant Dr. Collar.

On appeal, plaintiffs challenged several rulings of the trial court. We reversed all the challenged rulings, including the trial court's ruling that plaintiff's expert, Dr. Rosenblum, was precluded from testifying as an expert witness regarding the issue of Dr. Collar's negligence. With regard to that ruling, we stated:

> Plaintiffs first argue that the trial court abused its discretion in ruling that Dr. Rosenblum was not qualified as an expert in cardiovascular pre- and post-operative care of patients or in the decision making processes of a cardiovascular surgeon. We agree. MRE 702 governs the determination of whether Dr. Rosenblum was qualified to testify as an expert witness in matters relating to cardiovascular surgery. *McDougall v Eliuk*, 218 Mich App 501, 507; 554 NW2d 56 (1996). In this case, plaintiff demonstrated Dr. Rosenblum's knowledge of the applicable standard of care where Dr. Rosenblum testified that based on his experience he was familiar with the applicable national standard of practice governing cardiovascular surgeons. *Id.* at 508; *Carlton v St John Hosp*, 182 Mich App 166, 171-172; 451 NW2d 543 (1989). Any gaps or weaknesses in Dr. Rosenblum's expertise are a proper subject for cross-examination and go to

the weight to be accorded his testimony, not its admissibility. *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987); *People v Whitfield*, 425 Mich 116, 123-124; 388 NW2d 206 (1986).

We utilized MRE 702 in our analysis because in *McDougall v Eliuk, supra* at 507, a panel of this Court determined that § 2169 of the Revised Judicature Act, MCL 600.2169; MSA 27A.2169, was unconstitutional to the extent that it conflicted with MRE 702.

After our opinion was released in this case, defendants filed an application to the Supreme Court, raising two substantive issues: (1) whether § 2169 is constitutional and applicable when determining whether an expert may testify in a medical malpractice action and (2) whether, pursuant to § 2169, Dr. Rosenblum was actually qualified to act as an expert against Dr. Collar.[1] Defendants' application was held in abeyance, because the Supreme Court already had other cases concerning the constitutionality of § 2169 pending before it.

In July 1999, the Supreme Court released its opinion in *McDougall v Schanz, supra.* In that case, the Court reviewed the issue whether § 2169 or MRE 702 governs a determination of when an expert is qualified to testify in a medical malpractice case. The Court held that MRE 702 must yield to § 2169 because the statute is an enactment of substantive law, which has, as its basis, a principle other than the orderly dispatch of judicial business or court administration. *McDougall v Schanz, supra* at 35. See also *People v Conat*, 238 Mich App 134, 163; 605 NW2d 49 (1999). On October 26, 1999, the Supreme Court

---

[1] Defendants did not challenge any of our other previous rulings.

remanded this case for our reconsideration in light of its decision in *McDougall v Schanz, supra.*

As applicable to this case, § 2169 states in relevant part:

> (1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine . . . and meets both of the following criteria:
>
> (a) *Specializes,* or specialized at the time of the occurrence which is the basis for the action, in the same specialty or *a related, relevant area of medicine* . . . as the specialist who is the defendant in the medical malpractice action.
>
> (b) *Devotes,* or devoted at the time of the occurrence which is the basis for the action, *a substantial portion of his* or her *professional time to the active clinical practice of medicine* . . . or to the instruction of students in an accredited medical school . . . *in the same specialty or a related, relevant area of health care* as the specialist who is the defendant in the medical malpractice action.
>
> (2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of medicine . . . .
>
> (d) The relevancy of the expert witness's testimony.
>
> (3) This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section.[2] [Emphasis added.]

---

[2] In 1993, § 2169 was substantially amended. The 1993 amendments are more restrictive than the requirements set out in the version of § 2169

In order to find that Dr. Rosenblum is qualified under § 2169, we have to determine that he specializes in "a related, relevant area of medicine" *and* that he either spends a substantial portion of his professional time practicing medicine or teaching medical students in a "related, relevant area of health care." The meanings of the phrases "related, relevant area of medicine" and "related, relevant area of health care" are key issues to the determination in this case. In that regard, this case presents an issue of first impression. There are no published cases previously interpreting the meaning of the statutory language at issue.

Issues of statutory interpretation are reviewed de novo as issues of law. *In re MCI Telecommunications Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

> In statutory interpretation, the primary goal must be to ascertain and give effect to the Legislature's intent, and the judiciary should presume that the Legislature intended a statute to have the meaning that it clearly expresses. A court should not speculate about the legislative intent beyond the statute's actual words. [*Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 685-686; 599 NW2d 546 (1999) (citations omitted).]

In other words, the Legislature is presumed to intend the meaning it plainly expressed. *Rheaume v Vandenberg*, 232 Mich App 417, 422; 591 NW2d 331 (1998). Unless a word or phrase is explicitly defined in a statute, every word or phrase should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. *Bio-Magnetic*

---

that applies to this case. *McDougall v Schanz, supra* at 21, n 2. We stress that our determination is to be made under the less restrictive, pre-1993 version of § 2169.

*Resonance, Inc v Dep't of Public Health,* 234 Mich App 225, 229; 593 NW2d 641 (1999). When construing a statute, this Court should presume that each word has some meaning and should "avoid any construction that would render the statute, or any part of it, surplusage or nugatory." *Karpinsky v St John Hosp-Macomb Center Corp,* 238 Mich App 539, 543; 606 NW2d 45 (1999), citing *Helder v North Pointe Ins Co,* 234 Mich App 500, 504; 595 NW2d 157 (1999).

The term "related" is defined as "associated" or "connected." *Random House Webster's College Dictionary* (1997), p 1097. The term "relevant" means "having practical value or applicability" or "bearing on the matter at hand; pertinent." *Id.* at 1098. Because it used the terms "related" and "relevant" in the pre-1993 version of the statute, the Legislature clearly evidenced an intent not to require an expert to specialize and practice in the same specialty as the defendant. Rather, the Legislature intended to allow a specialist in one field to testify against a specialist in another field as long as the two fields were connected to each other and had practical value to one another and as long as the proposed expert practiced or taught in the associated, pertinent area of health care. Using the ordinary definitions of related and relevant, it cannot seriously be disputed that, for purposes of this case, cardiology and cardiovascular surgery are sufficiently associated to one another and have sufficient practical value to one another to meet the requirements of § 2169.

Cardiology is the "branch of medicine dealing especially with the functions of the heart and with the diagnosis and treatment of heart disease." 1 Attorney's Dictionary of Medicine and Word Finder, p C-81.

A cardiologist specializes in the diagnosis and treatment of heart disease. *Id.* Cardiovascular surgery is surgery "involving the heart and the larger blood vessels, as the aorta or the pulmonary arteries." *Id.* at C-87. By definition, and in practical reality, both specialties concern the functions of the heart and treatment of diseases or problems with the heart. Dr. Rosenblum filed an affidavit in this case, which contained information similar to the testimony that he gave regarding his qualifications. In the affidavit, he succinctly asserted that cardiology and cardiovascular surgery are closely related specialties because both specialties involve the medical and surgical treatment of cardiac patients. More specifically, he also averred that both cardiologists and cardiovascular surgeons are involved in the preoperative and postoperative care of aortic valve replacement patients and are involved in the decision whether aortic valve replacement surgery should take place. In this case, the theory of liability against Dr. Collar was that the second surgery was necessary because Dr. Collar and Dr. Melvin were negligent when they improperly proceeded with the first surgery while plaintiff McClellan was suffering from a severe infection. A critical issue was whether proceeding with the surgery under the circumstances breached the standard of care. Rosenblum indicated, and defendants do not dispute, that, as a cardiologist, he works with cardiovascular surgeons on a regular basis and is intimately familiar with the standard of care of board-certified cardiovascular surgeons with regard to when and under what circumstances aortic valve replacement surgery should or should not be done and with the preoperative aspects of aortic valve replacement.

Cf. *Carlton, supra,* 182 Mich App 171-172, where the proposed expert, a cardiologist, indicated that he was not familiar with the standard of care for the surgeon in the case. Given the theory of the case and the evidence that cardiology and cardiovascular surgery are interrelated with regard to the preoperative and postoperative care of aortic valve replacement patients, no other conclusion can be reached but that cardiology and cardiovascular surgery are related, relevant areas of medicine for purposes of § 2169.

Defendants nevertheless posit an argument to the contrary, claiming that the fields are not relevant and related under § 2169. In making their argument, defendants focus only on the differences in the specialties and ignore the statutory language, which does not require experts to be specialists in the exact fields practiced by defendants against whom they are going to testify. We find defendants' argument to be both unsupported and unpersuasive. We agree with plaintiffs that if cardiology and cardiovascular surgery are not related and relevant to each other, at least with regard to the facts in this case, no two specialties will ever meet the "related" and "relevant" criteria of the pre-1993 version of § 2169.

In sum, Dr. Rosenblum meets the criteria in § 2169, and therefore, he qualifies to act as an expert on the issue of defendant Dr. Collar's negligence. Dr. Rosenblum specializes in an area of medicine that is a related and relevant area to that practiced by defendant Dr. Collar. Subsection 2169(1)(a). In addition, defendants do not dispute that Dr. Rosenblum devotes a substantial portion of his time to the clinical practice of medicine as a cardiologist. Subsection 2169(1)(b). There is also no question that Dr.

Rosenblum satisfied the requirements relative to education, professional training, area of specialization, and length of time engaged in medical practice or instruction necessary to qualify as an expert. Subsection 2169(2)(a)-(c). And finally, his testimony was clearly relevant to the issues in the case.

We therefore affirm our prior decision and reverse the trial court's ruling that Dr. Rosenblum was not qualified to render expert testimony relative to issues related to Dr. Collar's alleged negligence. We emphasize that our ultimate ruling is limited to the facts of this case. In making our ruling, we do not mean to suggest that a cardiologist will always be able to testify against a cardiovascular surgeon where the pre-1993 version of § 2169 applies. However, where, as here, the specialties overlap with regard to the patient's care, the proposed expert meets the criteria set out in § 2169, and the proposed expert is undisputedly familiar with the standard of care at issue, we find that he is able to render expert testimony.

Reversed and remanded for further proceedings consistent with both this opinion and our prior opinion. We do not retain jurisdiction.