MARKMAN, J.
(concurring). Although I fully agree with the majority opinion, I write separately to address what I think is its failure to fully explain why its definition of “personal insurance protection coverages,” which is limited to a member insurer’s initial insurance policy, is required by the statute. If the majority’s definition is correct, the MCCA will often be allowed to review member claims for reasonableness because the policy itself will often limit claims to “reasonable” costs.[1] On the other hand, if the dissent is correct that settlement agreements and consent judgments are part of a member insurer’s “coverages,” and indeed may effectively become part of a member’s “policy,” then the MCCA will only rarely be allowed to review claims for reasonableness. The question then posed is which of these *435 interpretations of “personal insurance protection coverages” is to be preferred under the law. In my view, the majority’s assertion that “coverages” refers to the “policy,” although ultimately the better definition, requires additional legal analysis.
The disputed statutory provision, MCL 500.3104(2), provides that “[the MCCA] shall provide and each member shall accept indemnification for 100% of the amount of the ultimate loss sustained under personal protection insurance coverages in excess of the [statutory threshold.]” In interpreting this language, our primary goal is to ascertain and give effect to the Legislature’s intent. McClellan v Collar (On Remand), 240 Mich App 403, 409; 613 NW2d 729 (2000). “As far as possible, effect should be given to every phrase, clause, and word in the statute.” Sun Valley Foods Co v Ward, 460 Mich 230, 237; 596 NW2d 119 (1999).
Here, the dissent has defined “coverages,” in MCL 500.3104(2), as follows:
Under the common meaning of “coverage,” the contractual liability amount that an insurer agrees to pay an insured is considered a part of the insurer’s coverage. [Black’s Law Dictionary (5th ed).] USF&G and Hartford paid funds pursuant to a consent judgment and a settlement agreement with the respective insureds. This contractual liability, or coverage, owed by each insurer is the total amount agreed to between the original contracting parties. [Posi at 448-450.]
Thus, the issue becomes whether “coverages” includes any contractual liability, which is properly insurable under the act, that a member insurer incurs at any time. The answer lies, I believe, in MCL 500.3104(7)(d), which requires that the MCCA,
[i]n a manner provided for in the plan of operation, calculate and charge to members of the [MCCA] a total *436 premium sufficient to cover the expected losses and expenses of the [MCCA] that the [MCCA] will likely incur during the period for which the premium is applicable.
This provision requires the MCCA to calculate premiums that it will charge to member insurers on the basis of the losses and expenses that the MCCA expects to incur. A principal component of this calculation is the frequency with which the MCCA will be required to reimburse member insurers for catastrophic claims, and for what amounts. Significantly, if a policy only requires a member insurer to pay “reasonable” claims, then the MCCA will charge a lower premium.
This conclusion is supported by two observations, which both assume a member’s policy only requires “reasonable” payments in accordance with MCL 500.3107. First, where a member insurer only pays “reasonable” claims, a member will incur fewer claims that meet the catastrophic threshold for which the MCCA is required to provide reimbursement. Second, the MCCA will anticipate that, when a catastrophic claim does occur, any amount in excess of the statutory threshold will also be “reasonable.” In other words, the MCCA’s liability for reasonable claims will clearly be less than payments for unreasonable claims. As a result, the MCCA will charge a lower premium to member insurers if those member insurers pay only “reasonable” claims because the MCCA’s “expected losses and expenses” will be less. Most importantly, the MCCA will only be able to determine the appropriate premiums that its member insurers must pay on the basis of their original policies.
The real question of interest then becomes what effect a subsequent settlement agreement or consent judgment that requires an arguably unreasonable payment will have on the MCCA’s responsibility to reim *437 burse claims under the original insurance policy for which it has already calculated and charged its premium. This depends on what, if any, effect these agreements have on the original policy. There are two plausible interpretations of what these types of agreements seek to accomplish. The first is that these are entirely new contracts, for which the member insurers have paid no premiums as contemplated by MCL 500.3104(7)(d). Under this interpretation, the member insurer will not have complied with the statute and will not be entitled to reimbursement from the MCCA. The second interpretation is that these agreements alter or modify the existing policy by further defining that policy’s pre-existing terms (i.e., what is meant by the policy’s requirement that a member insurer pay reasonable personal protection insurance benefits, as required by MCL 500.3107). Under this latter interpretation, if a settlement agreement purports to alter or modify the original policy, then the member insurer will have paid premiums to the MCCA before the accident has occurred. However, any such alteration or modification to a pre-existing policy cannot reasonably increase the MCCA’s liability because a member will only have paid premiums based on the MCCA’s assessment of the initial policy.
Liberty Mut Ins Co v Michigan Catastrophic Claims Ass’n, 248 Mich App 35; 638 NW2d 155 (2002), is instructive on this point. Liberty Mut examined a situation in which a member insurer had an insurance policy with an out-of-state driver who subsequently moved to Michigan and catastrophically injured a Michigan resident. The member insurer paid personal protection insurance benefits to the injured Michigan resident based on the out-of-state driver’s policy, even though that policy at the time of the accident was not a Michigan policy. However, in order to be eligible for *438 MCCA reimbursement, the member insurer attempted to retroactively reform its policy, including remitting unpaid premiums, so as to comply with MCL 500.3104 before submitting its claim to the MCCA. Nevertheless, the MCCA rejected the member insurer’s claim, and the Court of Appeals agreed, stating:
If we were to accept plaintiffs argument, we would set a precedent by which an insurer could withhold premium payments for policyholders who moved to Michigan, then, upon a loss exceeding $250,000, the insurer could simply reform the contract, submit the previously due premium payments, and be reimbursed for claims paid in excess of $250,000. Under that situation, the MCCA would be deprived of premiums for policies on which no claims are made, thus defeating the “spread the risk” concept in insurance. [Id. at 47.]
This rationale applies with equal force to settlement agreements and consent judgments that attempt to retroactively increase the scope of a policy’s coverage even after a member insurer has paid its premiums to the MCCA. Although the member insurers in the instant consolidated cases have paid part of their premiums to the MCCA, they have, in one sense, effectively “misrepresented” to the MCCA what amounts they would pay to their insured drivers in the event of a catastrophic claim. A member insurer that informs the MCCA that it will only pay “reasonable” claims, but then subsequently modifies the policy after the accident occurs to include unreasonable claims, has essentially sought reimbursement for claims for which it has not paid premiums.
Additionally, unlike the member insurer in Liberty Mut, the member insurers in this case sought to reform the policy without even purporting to pay the premiums that would have been owed. Such a practice defeats the very purpose of MCL 500.3104(7)(d) by denying the *439 MCCA the opportunity to impose a properly calculated premium, which is essential to the MCCA’s ability (or indeed any insurer’s ability) to collect sufficient premiums to further its “risk spreading” function. This is clearly contrary to the language of MCL 500.3104(7)(d), which requires the MCCA to impose a premium on a member insurer that is “sufficient to cover the expected losses and expenses of the [MCCA] that the [MCCA] will likely incur during the period for which the premium is applicable.” As a result, the majority, in my judgment, correctly concludes that the statute requires that the original policy determine the MCCA’s reimbursement responsibilities.

 The dissent is correct that the reasonableness requirement of MCL 500.3107 is not integrated into the indemnification clause set forth in § 3104(2). Post at 457. However, the majority opinion does not attempt to incorporate this requirement into the MCCA’s statutory power to review a member insurer’s claim to ensure it is in compliance with the policy. Rather, it holds that the MCCA can review a member’s claim for compliance with the policy, which, as represented by both parties, generally includes a requirement that member insurers reimburse only reasonable claims based on § 3107.