*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

KATHLEEN MICHELI,

        Plaintiff-Appellee,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, also known as
MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendant,

CITIZENS INSURANCE COMPANY,

        Defendant-Appellee,
and

MARY KNEISER, M.D. and ABILITY
ASSESSMENTS PC,

        Nonparty-Appellants.

FOR PUBLICATION
February 10, 2022

No. 356559
Macomb Circuit Court
LC No. 2019-005005-NF

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

GLEICHER, C.J. (*concurring*).

The majority holds that the circuit court did not abuse its discretion by refusing to quash the third-party subpoena issued to Dr. Kneiser. I concur and write separately to expand on the majority's analysis.

The issue presented is whether plaintiff should have been permitted to serve a nonparty subpoena seeking the production of documents on defendant Citizens Insurance Company's expert witness, Dr. Mary Kneiser. The subpoena requested information regarding the percentage of Dr. Kneiser's time devoted to "independent medical examinations" during the preceding four years, and copies of financial records reflecting Dr. Kneiser's earnings for performing "independent medical examinations" during the same period. The circuit court refused to quash the subpoena.

-1-

I agree with the majority that the information sought was discoverable and that the case is not moot.

## I. MOOTNESS

Whether a case is justiciable is a court's initial consideration. Here, mootness did not surface as an issue until after the case was submitted to a panel for decision—telling timing, in my view.

One week before oral argument, Ability Assessments' counsel filed an "emergency" motion to withdraw this appeal on the ground of mootness. Counsel's motion included a letter from Dr. Kneiser dated December 23, 2021, stating simply: "I withdraw as an expert witness in the above listed case." We denied this "emergency" motion a few days later. On January 4, 2022—the day before oral argument—Citizens filed a brief on appeal, a request for oral argument, and a motion for immediate consideration. During the nine months that the case awaited hearing in this Court, Citizens had not filed a single appellate pleading, despite having strenuously objected to the subpoena in the circuit court.

Citizens' late-filed appellate brief beseeched us to refrain from issuing a "published decision affirming the trial court." During oral argument, counsel for Ability Assessments echoed this plea, adding a mootness argument based on Dr. Kneiser's last-minute withdrawal.

The majority properly holds that the issue presented by the parties' briefing is publicly significant, capable of repetition, and yet likely to evade review. An additional legal ground defeats the mootness claim and justifies publication of this opinion.

The circumstances surrounding Dr. Kneiser's withdrawal as an expert smack of gamesmanship. The United States Supreme Court has declared that "post-certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye." *Knox v Serv Employees Int'l Union, Local 1000*, 567 US 298, 307; 132 S Ct 2277; 183 L Ed 2d 281 (2012). This permutation of mootness principles, known as the voluntary cessation doctrine, has not yet been adopted in Michigan, but it applies here.

In *Knox*, the petitioner had "defended the decision below on the merits," but after certiorari was granted, took an action designed to render the case moot. *Id*. The Supreme Court held that the petitioner's action—refunding union dues—would not justify a dismissal for mootness because the petitioner could simply resume the challenged conduct after dismissal. *Id*. Here, Citizens and Ability Assessments waited until the 11th hour to decide that they did not want this panel to review the validity of a third-party subpoena seeking an expert's financial records. The legal issue presented in this appeal could arise again on remand, and is likely to recur in other cases.

Citizens vigorously contested the subpoena served on Ability Assessments in the circuit court. Ability Assessments and Dr. Kneiser filed an emergency application to appeal the circuit court's denial of Citizens' motion to quash the subpoena. We granted the application on March 25, 2021, and the briefs on appeal were filed by Ability Assessments and plaintiff by July 14, 2021. On December 3, 2021, this Court notified the parties of the names of the panel members assigned to the case. Suddenly, on December 23, 2021, Dr. Kneiser announced her withdrawal as an expert

and moved to dismiss the appeal as moot. And Citizens waited until the day before oral arguments to join Dr. Kneiser's motion.

It is difficult to view this turn of events as anything other than a ploy to avoid review by this Court of Appeals panel. Dr. Kneiser's one-sentence letter to her counsel offers no reason for her decision to withdraw her services. Apparently, Dr. Kneiser had no interest in doing so until the identities of the three judges hearing this case were revealed. I regard this procedural posturing "with a critical eye," as directed by *Knox*. And in my view, there is no explanation for this sudden change of mind other than forum shopping, which defeats mootness.

Ability Assessments has not explained why this Court should now simply pass on an issue it persuasively argued was legally significant. Nor has it addressed a well-recognized exception to mootness involving issues capable of repetition and yet evading review. A narrow exception to the voluntary cessation doctrine provides that a case *is* moot when "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v Concentrated Phosphate Export Ass'n*, 393 US 199, 203; 89 S Ct 361; 21 L Ed 2d 344 (1968). The party asserting mootness bears a "heavy burden" of persuasion. *Friends of the Earth, Inc v Laidlaw Environmental Servs (TOC), Inc*, 528 US 167, 189; 120 S Ct 693; 145 L Ed 2d 610 (2000) (quotation marks and citation omitted). Ability Assessments has not carried this burden. To the contrary, the facts support that today's "mootness" argument is nothing more than a calculated diversionary tactic intended to avoid a decision by the three judges randomly assigned to hear this case, and that had Ability Assessments drawn a different panel, the legal issue would have been joined without protest.

The voluntary cessation rule prohibits a party from evading judicial review by ceasing challenged conduct to avoid judicial scrutiny. Here, the record strongly suggests blatant judge-shopping. Ability Assessments went to an unusual and costly length—filing an interlocutory application for leave to appeal—to seek redress for a judicial ruling it characterized as clearly wrong and a flagrant abuse of discretion. This Court granted that application because it raised an issue worthy of plenary consideration. Because the situation presented here is likely to recur the next time a party seeks similar information from an expert witness, the public interest is served by addressing the fully briefed and well-argued legal issue here.

## II. AN OVERVIEW OF THE PERTINENT COURT RULES

Ability Assessments raises three substantive arguments: a nonparty subpoena may not be used to discover information possessed by an expert witness without leave of the court, an expert's financial information is beyond the permissible scope of discovery, and the circuit court abused its discretion by failing to quash the subpoena based on its "oppressiveness." I would approach these arguments somewhat differently than the majority, but I reach the same ultimate conclusions. My analysis begins with the general principles underlying the court rules governing discovery.

The Michigan Court Rules declare at their outset that the rules "are to be construed, administered, and employed by the parties and the court to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties." MCR 1.105. A "just, speedy, and economical determination" of the case at hand is served by discovery that fulfils the central purpose of pretrial discovery:

preparation of a lawsuit for trial. That purpose necessarily includes gathering the groundwork for effective cross-examination of the other side's witnesses.

The scope of discovery authorized by the court rules is broad, and explicitly recognizes that information relevant to a party's "defenses" is discoverable and need not be admissible at trial:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable. [MCR 2.302(B)(1).]

A matter is "relevant" to a party's defense when it has a practical bearing on that defense or is "pertinent" to it. *McClellan v Collar*, 240 Mich App 403, 410; 613 NW2d 729 (2000) (quotation marks and citation omitted). "Relevance" is broadly defined in Michigan to include evidence that has "*any* tendency" to make a fact of consequence more or less probable. MRE 401 (emphasis added). Our Supreme Court has explained, "The threshold is minimal: 'any' tendency is sufficient . . . MRE 401." *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998).

Evidence of a witness's bias readily qualifies as relevant and discoverable.

Bias is a common-law term describing "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *People v Layher*, 464 Mich 756, 763; 631 NW2d 281 (2001) (formatting and citation omitted). A "witness'[s] like, dislike, or fear of a party, or by the witness'[s] self-interest" may demonstrate bias. *Id*. (formatting and citation omitted). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony." *Id*. (formatting and citation omitted). In *Layher*, our Supreme Court expressly advanced a "traditionally liberal view of cross-examination regarding witness bias." *Id*. at 768. See also *Hayes v Coleman*, 338 Mich 371, 381; 61 NW2d 634 (1953) ("It is always permissible upon the cross-examination of an adverse witness to draw from him any fact or circumstance that may tend to show his relations with, feelings toward, bias or prejudice for or against, either party, or that may disclose a motive to injure the one party or to befriend or favor the other. The party producing a witness may not shield him from such proper cross-examination for the reason that the facts thus elicited may not be competent upon the merits of the cause.").

The next question is whether an expert's financial relationship to a party provides relevant and discoverable evidence of bias.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 595; 113 S Ct 2786; 125 L Ed 2d 469 (1993) (quotation marks and citation omitted). For that reason, cross-examination may

-4-

help a jury to sort out which experts are more credible than others. An expert witness's credibility is critical to that inquiry.

More than 40 years ago, our Supreme Court acknowledged that "[a]n expert witness's experience testifying in court may influence the manner in which he or she testifies. The same is true for experience in evaluating cases which may come to court. It is thus proper to bring out on cross-examination the number of times a witness testifies in court, or is involved in particular types of cases." *Wilson v Stilwill*, 411 Mich 587, 599-600; 309 NW2d 898 (1981). Today, that is an unremarkable proposition. Routinely, experts are extensively questioned at deposition and trial regarding their testimonial track-records. This Court has recognized the importance and the legitimacy of such evidence:

> While there is nothing improper about doctors choosing to spend a large amount of time reviewing cases and testifying on behalf of injured persons, this does not mean that a reasonable person, made aware of how often such doctors give depositions, and the noteworthy fees such services command, might not, without pejorative intent, describe such practitioners as "litigation doctors" who "were paid a large amount of money." [*Hunt v Freeman*, 217 Mich App 92, 98; 550 NW2d 817 (1996).]

Indeed, counsel may properly refer to an opponent's expert as a "professional witness" where the proofs showed the doctor's practice was "limited to evaluations." *Heins v Detroit Osteopathic Hosp Corp*, 150 Mich App 641, 644-645; 389 NW2d 141 (1986).

Equally unremarkable is the notion that an expert who regularly testifies for one particular attorney or client may be biased in a party's favor. *Wilson*, 411 Mich at 600-601. And because experts are compensated for their services, inquiry into the amount of compensation received is also standard practice on cross-examination. It is no stretch to conclude that an expert who is well compensated by a particular party, or who has a continuing and close financial relationship with a party, may be biased in that party's favor. It is well accepted that "[a] showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases." *Collins v Wayne Corp*, 621 F2d 777, 784 (CA 5, 1980).

> [T]he fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants, and an ongoing economic relationship with certain insurance companies, certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised, and placing it squarely within the scope of discovery authorized by [Federal Rule of Civil Procedure] 26(b)(1)[.] [*Behler v Hanlon*, 199 FRD 553, 557 (D Md, 2001).]

That said, an expert's tax returns and other financial details may constitute private and confidential information, or may require time-consuming efforts to pull together. In medical malpractice cases, the Legislature has decreed that an expert's tax returns are simply off-limits. MCL 600.2169(5)(a). In all other cases, the court rules permit the trial judge to issue a protective

order to protect an expert "from annoyance, embarrassment, oppression, or undue burden or expense." MCR 2.302(C).

Michigan's discovery rules authorize comprehensive inquiry into relevant subjects, including a witness's credibility, provided that the inquiry is "proportional to the needs of the case." MCR 2.302(B)(1). The information at issue here *is* relevant to Dr. Kneiser's possible bias in favor of insurance companies, specifically, Citizens. Relevant information is discoverable. The more complicated questions are whether plaintiff's subpoena seeking that information conformed with the court rules, and whether the burden or expense of the discovery of this information outweighs its likely benefits.

## III. MCR 2.302(B)(4) VERSUS MCR 2.305

Two court rules are at play in this case: one governing discovery from expert witnesses, MCR 2.302(B)(4), and the other allowing a party to subpoena a nonparty for documents, MCR 2.305(A)(1). Ability Assessments contends that the expert discovery rule trumps the nonparty subpoena rule. In my view, these two rules should be read individually, and then harmonized. This approach has been applied in countless cases. For example, in *Costa v Community Emergency Med Servs, Inc*, 263 Mich App 572, 584; 689 NW2d 712 (2004) (citation omitted), we explained that where "the plain terms of the rules do not conflict with each other, we interpret them individually by their unambiguous terms. If we can construct two rules so that they do not conflict, that construction should control." More recently, we highlighted the importance of focusing on the "plain language" of the rules and discerning their intent based on that language and the "structure" of the court rules as a whole. *Decker v Trux R Us, Inc*, 307 Mich App 472, 479; 861 NW2d 59 (2014) (quotation marks and citation omitted). Where a potential conflict is not "irreconcilable," the two rules should be read as a "harmonious whole." *Id*. at 481. Doing so here yields the conclusion that the discovery of evidence relevant to an expert's *credibility* may be pursued in several different ways.

The catch line of MCR 2.302(B)(4) is "Trial Preparation; Experts." The rule's first sentence provides that it covers "[d]iscovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subrule (B)(1) and acquired or developed in anticipation of litigation or for trial. . . ." Information meeting that description may be discovered "only" in accord with the methods described in the balance of the rule. The rule does not offer the option of serving a third-party subpoena on a designated expert. The rule does, however, allow a court "on motion" to "order further discovery by other means," subject to payment of the expert of a reasonable fee for time spent in complying with a discovery request. MCR 2.302(B)(4)(a)(*iii*).

The majority correctly concludes that MCR 2.302(B)(4) applies only to facts and opinions "acquired or developed" by an expert "in anticipation of litigation." Information relevant to Dr. Kneiser's credibility does not fit that description. The most natural construction of the term "acquired or developed in anticipation of litigation" suggests that the rules' drafters anticipated that other subjects would arise during discovery. But even if MCR 2.302(B)(4) is broadly and non-textually construed to include the information sought in the subpoena, any error in permitting the discovery is entirely harmless.

MCR 2.302(B)(4)(a)(*iii*) empowers the circuit court to "order further discovery" on motion. Plaintiff did not bring the motion leading to the order from which this appeal flows—Ability Assessments and Dr. Kneiser did. This is a distinction without a difference, as the rule contemplates that a judge may order discovery of an expert beyond the limits described in MCR 2.302(B)(4)—and a judge did.

And there is another reason that plaintiff's failure to move for permission to serve the subpoena on Dr. Kneiser and her professional corporation is much ado about nothing. The rule permits a party to take an expert's deposition. MCR 2.302(B)(4)(a)(*ii*). The rule governing depositions on oral examination, MCR 2.306, allows a party's notice of deposition to include "a request for the production of documents and tangible things at the taking of the deposition. MCR 2.310 applies to the request." MCR 2.306(B)(2). Ability Assessments and Dr. Kneiser concede that an expert's "bias and credibility" are "relevant," but contend that "such matters may be inquired into on cross examination" rather than being the subject of subpoenas. MCR 2.306(B)(2) directly refutes that argument. The rule permitted plaintiff to seek information at issue by way of a notice of deposition accompanied by a request for production, which serves precisely the same function as a subpoena. Plaintiff apparently decided to forgo the deposition (in the time of Covid-19, not an unreasonable choice). Once again, any deviation from the strict letter of the rules was harmless.

"[T]he purpose of discovery is to simplify and clarify issues." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). "Thus, the rules should be construed in an effort to facilitate trial preparation and to further the ends of justice." *Id*. And the rules are intended to promote "the just, speedy, and economical determination of every action," which requires overlooking errors that "do[] not affect the substantial rights of the parties." MCR 1.105. Here, Ability Assessments and Dr. Kneiser decry plaintiff's failure to notice Dr. Kneiser's deposition and to request the information contained in the third-party subpoena via a deposition notice. They have yet to explain what possible difference this could have made. Had the deposition notice been served with a request for production, Ability Assessments and Dr. Kneiser would have filed an objection. And exactly the same result would have obtained.

Finally, MCR 2.305(A)(1) and (2) permit a party to "issue a subpoena to a non-party for a deposition, production or inspection of documents, inspection of tangible things, or entry to land" and to state in the subpoena that "it is solely for producing documents . . . for inspection and copying, and that the party does not intend to examine the deponent." The nonparty may move to quash the subpoena, or to request prepayment of the reasonable cost of producing the documents. MCR 2.305(A)(4). MCR 2.305 is not limited to non-experts. Reading this rule in conjunction with MCR 2.306(B) leads to the inescapable conclusion that MCR 2.305 offers an alternate pathway for discovering facts relevant to an expert's credibility, and evidence pertinent to MCL 500.3151(2)(b), which requires that "[d]uring the year immediately preceding [an] examination" related to a claim for personal protection insurance benefits, a physician "must have devoted a majority of his or her professional time" to the "active clinical practice of medicine" or to the instruction of medical students. Facts germane to this statute are most easily garnered in precisely the manner that plaintiff employed.

The court rules under scrutiny do not conflict. Rather, they are part of a comprehensive approach to discovery embodied by rules designed to open doors to information rather than to make the process onerous and unreasonably complex.

## III. PROTECTIVE ORDERS

In its motion to quash the subpoena, Citizens argued that it was overly burdensome, expensive, and would "serve[] only to annoy and disturb" Dr. Kneiser. Citizens alleged that it would take Dr. Kneiser "a significant amount of time" to comply but produced no evidence to that effect, such as an affidavit from Dr. Kneiser shedding light on her record-keeping practices. After the circuit court refused to quash the subpoena, Citizens filed a motion for reconsideration and attached an affidavit signed by Dr. Kneiser that partially addressed the subjects of the nonparty subpoena. But the affidavit provided no information relevant to Citizens' argument that the subpoena was unduly burdensome.

The circuit court admitted in its opinion denying reconsideration that it had not initially addressed Citizens' argument that the subpoena was oppressive or burdensome, noting that Citizens "still has not provided the Court with any information regarding the burden or expense of the proposed discovery in order for this court to determine whether such outweighs its likely benefit." The circuit court continued:

> Similarly, Citizens has not made a cogent argument that the subpoenas issued by Plaintiff were intended to harass, embarrass, and dissuade the Doctors from participating in the litigation process. Merely citing to a case where the Court of Appeals determined that it was not an abuse of discretion to deny a discovery request does not show that any discovery regarding an expert witness'[s] potential bias is intended to harass, embarrass, or intimidate them.

In my view, Citizens and Dr. Kneiser have been afforded ample opportunity to support that alleged burden imposed by the subpoena, or that it was the product of improper motives. I would hold that the circuit court did not abuse its discretion in finding the discovery proportional. Nevertheless, in its opinion on reconsideration the circuit court generously afforded Citizens the option of filing a "separate motion requesting a protective order." Given that concession, I agree that remand regarding that question alone is appropriate.

/s/ Elizabeth L. Gleicher